ALBERT E. GOODRICH

*v.*

EZRA B. LINCOLN.

1. PRACTICE—*finding of facts by Appellate Court.* Where there is no controversy in regard to the facts of a case, this will obviate the necessity of a special finding of the facts by the Appellate Court.

2. BANKRUPTCY—*right to retain money paid under order after its reversal.* Where the assignee in bankruptcy pays the claim of a creditor under an order of the District Court of the United States, and after such payment the order of the District Court is reversed or vacated on appeal, the creditor can not retain the money so paid to him, but it becomes assets for the payment of other creditors, and where the bankrupt is restored to his rights in the property, etc., in the assignee's hands, by effecting a composition with his creditors, he may maintain an action in his own name to recover the money so paid under the reversed order.

3. SAME—*effect of composition.* The effect of a composition of a bankrupt with his creditors upon an offer to pay a certain per cent, and be restored to all the property so remaining in the assignee's hands, when perfected in accordance with the law, is to restore to the bankrupt, not only the property in the assignee's hands, but also to invest him with the same rights of action as previously existed in the assignee.

4. It is not enough to impeach a composition made by a bankrupt that it was not with all the creditors. It is enough that it is binding upon all the creditors who were made parties to it, and this includes all who were parties to the proceeding in bankruptcy. Creditors having due notice of the proceeding for compounding, are bound by the result or final order of the court, though not assenting.

5. SAME—*who is a creditor.* Where a party presenting a claim against a bankrupt is paid by the assignee, and after payment the order of the District Court allowing the same is reversed by the Circuit Court of the United States, the person so presenting his claim can not, after such reversal, insist that he is not a creditor and therefore not bound by proceedings discharging the bankrupt on a composition with his creditors.

6. SAME—*jurisdiction of State courts.* Rights growing out of proceedings in bankruptcy may be enforced in the State courts. It is only where the proceeding is to administer the bankrupt law itself that the United States courts have exclusive jurisdiction.

7. SAME—*payment under composition order.* Where a creditor has already received full payment of his claim, wrongfully, as adjudged by the Bankruptcy court, and the order of court confirming a composition with creditors required the bankrupt to pay twenty-five cents on the dollar as a condition, it was *held,* that the bankrupt was not bound to pay such creditor who already had in his hands seventy-five cents on the dollar more than he was entitled to receive.

8. SAME—*whether creditor has lien.* Where A and B, as the owners of adjoining lots, agreed that A, who was then ready to build on his premises, should build on the division line, making a party wall, and that when B built he should pay him one-half the cost of the wall, and B afterwards built, but before payment was adjudged a bankrupt, it was *held* that A was not entitled to a vendor's lien, and was not entitled to any priority or preference over any other creditor.

APPEAL from the Appellate Court of the First District; the Hon. THEODORE D. MURPHY, presiding Justice, and HON. GEO. W. PLEASANTS and Hon. JOSEPH M. BAILEY, Justices.

Messrs. BOUTELL & WATERMAN, for the appellant.

Mr. W. T. BURGESS, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

There is no controversy here in regard to the facts, and this may be taken as obviating the necessity of a special finding of facts by the Appellate Court.

The question is, do the facts constitute a legal cause of action on the part of appellee against appellant.

The substance, in brief, of the facts relied upon by appellee may be stated thus:

Appellee and appellant were owners of adjoining lots in the city of Chicago. After the great fire of October 8, 1871, appellant being about to rebuild on his lot, it was agreed between him and appellee that they would build a party-wall, and as appellant was then proceeding to build and appellee was not yet ready to build, it was agreed that appellant should build the wall and appellee should pay him one-half of the expense thereof when he got ready to use it. Appellant proceeded to build the wall, and, afterwards, appellee proceeded to use it by building to it on his own lot, without paying appellant, as he agreed to, one-half the expense of building the wall.

In November, 1873, on petition of appellee's creditors, he was adjudicated a bankrupt by the District Court of the United States for the Northern District of Illinois, and R. E. Jenkins was appointed his assignee. Jenkins filed a petition to sell the property free of incumbrances on which appellee had built and was using the party wall, as before stated, and made appellant a party thereto. Appellant appeared and made claim, as a secured creditor, having a lien upon the property. The register disallowed this claim, but the District Court, on the 14th of July, 1874, sustained it and ordered Jenkins to pay appellant *"for a party division wall"* the sum of $1792. Within the ten days allowed by § 4981, of the Bankruptcy act, (Revised Statutes U. S. 2d ed. p. 963,) J. D. Gardner & Co., unsecured creditors of appellee, perfected an appeal from this order to the United States Circuit Court of the proper circuit. Before, however, the petition on that appeal was filed, that is to say, on the 16th of July, 1874, Jenkins paid over to appellant the $1792 ordered to be paid by the District Court. On the hearing of that appeal, September 14, 1875, the Circuit Court reversed the decree of the District Court directing the payment of the $1792 to appellant. Meanwhile, on the 12th of September, 1874, appellee filed in the proper office a petition for a composition with his creditors, in which he states that thereunto annexed and made part of his petition is schedule

"A," signed by him, containing the names and addresses of all of his creditors. This includes the name of appellant as a creditor for $1500. His proposition is in these words: "To pay in money, subject to the priorities declared by said acts, (*i. e.* Bankrupt acts,) twenty-five cents on the dollar (twenty-five per cent) of the principal of each and every debt due by him, with interest on such of them as it may have accrued, up to the 24th day May, A. D. 1873, in satisfaction of said debts, principal and interest, under the order of the court, and thereupon all the property, assets and estates of the said Lincoln now in the hands of the assignee in bankruptcy, or to which such assignee may be entitled and undisposed of, with all the rights and causes of action vested in said assignee touching the property to him, to be re-assigned and transferred to him, said Lincoln."

On the 14th of September, 1874, notices were sent to each one of the creditors, of the meeting of creditors called for the 29th of September, 1874, and one of these notices was received by appellant. The register made his report of that meeting, and named appellant as one of appellee's creditors for the amount of $1800. Appended to the report is this memorandum: "Amount of this claim disputed; it is stated at about what Goodrich claims; see memorandum of same claim on next page." On that page is this memorandum: "Albert E. Goodrich, Chicago, Illinois; this claim has been paid out of the sale of the State street property, as a lien upon it, but the fact of such lien is denied, and is now in litigation."

The register's report also shows the adoption of the following resolution by the creditors: "Resolved, to accept the proposition for composition made by said debtor."

Appellee presented his petition to the District Court for a rule on creditors to show cause why the resolution adopted by the creditors should not be recorded, etc. And on the 30th of October, 1874, the court ordered a rule to issue, etc. And, on the 11th of November, 1874, the composition was confirmed by the court. That order recites the giving of due notice to

the creditors in conformity with the requirements of the law, and it directs " that upon said Lincoln producing to his said assignee the receipt of said creditors, or such of them as the said Lincoln shall have paid, or the receipt of the clerk of this court showing the deposit of money in court sufficient to pay said creditors, or those of them whose receipt said Lincoln shall not produce, and also the receipt of all the costs and expenses of the proceedings in bankruptcy against said Lincoln in this matter remaining unpaid, to be taxed, that the said assignee pay over and deliver to the said Lincoln all of the property, assets and estate of said Lincoln in his hands, or to which said assignee may be entitled as such and undisposed of, with all the rights and causes of action vested in such assignee touching the property assigned to him.   *   *   * And that upon the filing of said receipts and depositing said sum of money with the clerk in court, the said Lincoln be discharged from all debts due by him to creditors whose names and addresses, and amounts due to whom, are specified in said list of creditors so filed of record."

Deed was executed by the assignee, under this order, and delivered to appellee on the 10th of December, 1874, conveying, as assignee, to appellee, all the estate, etc., which by said proceedings in bankruptcy became or have been vested in him, remaining undisposed of, and all rights and causes of action vested in said assignee.

It was admitted that appellee produced to the assignee, before the execution of the deed, receipts showing the payment of twenty-five per cent to all of his creditors, as reported by the clerk, and also that he had paid all the costs and expenses of the bankruptcy proceeding.

It was also admitted by the appellant that demand was made upon him to refund the money paid to him by the assignee, under the order of the District Court of July 17, 1874, after that order was reversed by the Circuit Court, both by the assignee and the appellee.

Counsel for appellant insist that the orders of the United

States courts do not give the money paid by the assignee to appellant, under the order of July 14, 1874, to appellee ; and they insist this money was to be paid to the assignee, to be distributed to the creditors under the order of the court.

We do not perceive the importance of the distinction discussed by counsel, whether the proceeding in the circuit court was appellate or supervisory only as applied to the facts before us. Assume, as they insist, it was supervisory only, it is conceded the order directing the money to be paid to appellant is reversed, or vacated, whichever it may be called; that is, thenceforth the case is as if that order had never been made, and that the additional order that " so much of said fund stand for distribution among the creditors of the bankrupt, in such manner as the District Court shall determine consistent with this order," be valid and binding. That order is made solely with reference to the record before the Circuit Court, and has no possible reference to the proceedings in the District Court for a composition, which could not legally have been within the view of the Circuit Court, because no record in reference thereto was before that court. The effect of the order is simply to place the money which had been paid to appellant in precisely the same situation as the other assets of the bankrupt. Without the order it must have been so held. It is impossible to conceive of a reason why, that order being vacated, this money should be regarded as different .from any other .money in the hands of the assignee. Until the composition was perfected all the money and property of the appellee was held by the assignee for precisely the same purpose declared by the Circuit Court in this order.

But the effect of the composition when perfected was to restore all money and property in the hands of the assignee to appellee. This is the purport of the statute, as is well shown by CHOATE, J., *In re Jacob August,* 19 B. R. N. R. 163. He said : " The creditors have in fact consented, by adopting the resolution of composition, that the entire estate be delivered to the bankrupts to enable them to perform, on

their part, the agreement of composition.   Thereupon it became the duty of the assignee to hand over any balance of money remaining in his hands to the bankrupt, and also any other assets belonging to the estate.   His functions, so far at least as the administering of the bankrupt's estate is concerned, are by the confirmation of the composition and the bankrupt's compliance with the conditions thereof, which were precedent to the delivery of the property to them, suspended, subject however to being revived in case, under the power reserved by the statute to the court, an order shall hereafter be made setting aside the composition.   The delivery by the assignee of any money or property to the bankrupts, pursuant to the terms of the composition, completely discharges him from any further liability therefor; the creditors having consented that he pay over the money in his hands to the bankrupts, have necessarily waived any right which, but for this agreement, they would have had to call him to an account therefor, at least so long as the agreement remains in force."

As observed by KETCHAM, J., *In re Morganstein,* 19 V. B. R. 112:  " The arrangement (composition) is left to the approval or non-approval of the court, looking only to the question, what is best for all concerned, according to equity and justice?   If adopted and carried out it ends the bankruptcy, and the bankrupt discharges himself."

Counsel say : " The composition proceedings are not necessarily with *all* the creditors, and there is no evidence that Mr. Lincoln ever compounded with *all* his creditors."

It is, in our opinion, quite enough that this composition is binding upon all the creditors who were made parties to it, and that this includes all who were parties to the proceedings in bankruptcy.   For all purposes of the present case those proceedings are at an end, and it will be time enough to look after the rights of other creditors in bankruptcy when they shall have put appellee into bankruptcy.   Appellant is sufficiently shown, by the record before us, to have been made a party to this composition, and to have been notified thereof by

proper notice, to be bound by it, although he occupies the position of a non-assenting creditor.

The point that he was not a creditor because he had been paid, is destitute of merit. He had not been lawfully paid. The order under which he was paid was improperly made, and has since been vacated and annulled by a competent tribunal. His duty was to comply with that order and occupy the position of a creditor. He could not, by his own wrong, make that a payment and conclusive of subsequent review, which would not have been a payment if he had performed his duty.

Whether the United States courts were competent to compel appellant to repay this money, as appellant's counsel insist, we think unimportant. They have not done so. He still keeps the money. The bankruptcy proceedings are ended. The only question now is between appellant and appellee. It has never been questioned that rights growing out of proceedings in bankruptcy may be enforced in the State courts. It is only where the proceeding is to administer the bankrupt law itself, that the United States courts have exclusive jurisdiction. Here, the right grows out of proceedings under the Bankrupt law, but the proceeding is simply to enforce a common law remedy.

But it is urged the court, in confirming the composition, ordered that appellee pay each creditor twenty-five cents on the dollar, and that appellee did not regard appellant as creditor enough to deposit twenty-five cents on the dollar for him. But what court would have required him to have gone through with such a silly and empty matter of form? Appellant had already received seventy-five cents on the dollar, on his claim, more than he was entitled to retain, and it needed but (to close up the composition with him) that he should pay to appellee that seventy-five cents on the dollar, and give him his receipt for the other twenty-five cents on the dollar.

The objection that it is inequitable for appellee to recover,

is without force.   Appellant occupies no more favored posi-
tion than other creditors.   Very plainly he was entitled to no
vendor's lien.   He had sold no real estate to appellee.   He
simply furnished materials and did work for him in building
a wall, and has not been paid for it.   His debt is precisely
like that of any other builder who has, in addition to doing
the work of building, also furnished the materials with which
to build.   The statute allows the composition, and it can not
be inequitable for a party to avail of every privilege allowed
him by statute.

The only remaining objection to be noticed is that the suit
should have been in the name of Jenkins, the assignee.   This
objection is urged for the first time here, and comes too late.
Besides, the statute vested the legal title to the assets in him
for the purpose of carrying out the provisions of the Bank-
rupt act only.   By the legal effect of the composition and his
reconveyance, that legal title was re-vested in appellee, and
thereafter he was the proper party to bring suit.

Perceiving no error in the judgment, it is affirmed.

*Judgment affirmed.*