# CASES

ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ILLINOIS.

WALTER P. ROCHE

*v.*

JOSEPH ULLMAN.

*Filed at Ottawa May 12, 1882—Rehearing denied September Term, 1882.*

1. PARTY WALLS—*purchaser—covenant running with the land.* An agreement under seal between the owners of adjoining premises, whereby one is to build a party wall, one-half on the ground of each, for building purposes, and the other is to pay for one-half the cost of its construction when he uses the same, or any part thereof, for a building upon his premises, when executed gives to each of the parties an easement on the lot of the other for the purpose of support of their respective buildings, which becomes appurtenant to their several estates, and as such passes to their respective assignees by any mode of conveyance that passes the title to the land itself.

2. Such an agreement providing that the covenants therein shall remain binding upon each party, his heirs and assigns or grantees, and so construed as to run with the land, and being duly recorded, will create cross-easements as to each owner, which will so run as to bind all persons succeeding to the estates to which such easements are appurtenant, and a purchaser of the estate of the owner so contracting will be required to pay one-half of the cost of the wall, if he avails himself of its benefits.

3. The doctrine that when the relation of landlord and tenant does not exist, only such covenants as are beneficial to the estate will run with the land, has no application to covenants respecting party walls creating mutual easements upon such owner's land to which they relate.

Appeal from the Appellate Court for the First District; —heard in that court on appeal from the Superior Court of Cook county; the Hon. George Gardner, Judge, presiding.

This is an appeal from a judgment of the Appellate Court for the First District, affirming a decree of the Superior Court of Cook county, wherein the appellant, Walter P. Roche, is charged personally, as the assignee of William M. Butler, with one-half the cost of a party wall constructed by appellee, under a written contract with Butler, upon the dividing line between adjacent lots in the city of Chicago, belonging, respectively, to Butler and appellee.

The following seem to be the facts in the case: In 1872, Joseph Ullman, the appellee, owned the west half of the west half of lot 2, block 31, original town of·Chicago, and William M. Butler owned the east half of the west half of the same lot. July 16, 1872, Ullman and Butler made the following party wall agreement:

"This agreement, made and entered into this 16th day of July, A. D. 1872, between Joseph Ullman, of the city of Chicago, State of Illinois, party of the first part, and William M. Butler, of the same city and State, party of the second part:

"Witnesseth: Whereas, said party of the first part is the owner in fee simple of the following described lot or parcel of land in the city of Chicago, county of Cook, State of Illinois: the west quarter of lot number two (2), of block thirty-one (31), in the original town (now city) of Chicago; and whereas, said party of the second part is owner in fee simple of the east half of the west half of lot number two (2), of block thirty-one (31), in the original town (now city) of Chicago; and whereas, said party of the first part is about to erect a brick wall, with a good·and substantial foundation of stone, on the division line of said two parcels of land above named, four stories high above the basement, and one hun-

dred and sixty feet from front to rear, the wall basement to be twenty inches thick, wall of first and second stories to be sixteen inches thick, wall of third and fourth twelve inches thick to top of battlement wall, is to extend eighteen inches above the roof of said proposed buildings; and whereas, said wall is to be built one-half on said east one-half of the west one-half of lot 2, block 31, and said other one-half of wall is to be built upon the west one-fourth of said lot 2, block 31, original town; and, whereas, both of said party owners desire to use and own said wall as a party wall and for common benefit:—It is hereby mutually covenanted and agreed that said wall, of the size and dimensions above described, the division line of the said above described parcels of land being the center of said wall, and said second party should have the right, at any time, to use said wall, or any part thereof as he may need, as a party wall for any building erected upon his said east half of west half of lot 2, block 31, original town, provided said second party shall first pay said party of the first part the then market value of said wall, or such part of said wall as he, the said party of the second part, may want or use. It is further agreed that the wall shall be ledged out four inches at each resting for the floor joists of each and every story of said building. It is also further agreed that the party of the second part will be to the expense of one-half of all the area walls, both front and rear, upon like conditions of the foregoing contract for building walls. It is also further agreed that all the covenants and agreements herein contained shall be binding upon each party, their heirs, executors, administrators and assigns, and grantees of the said parties of the first and second part, and shall be so construed as to run with the land.

"In witness whereof the said parties have hereunto set their hands and seals, the day and year above written.

Jos. ULLMAN,          [seal.]
WILLIAM M. BUTLER.  [seal.]"

This agreement was recorded in the recorder's office of Cook county, August 2, 1872. Ullman thereupon proceeded to build upon his own lot, and in doing so erected a party wall, in accordance with the above agreement, one-half of which was upon his own lot and one-half upon Butler's lot. After the above agreement was made and recorded, Butler sold and conveyed his lot to Eben F. Runyan, who sold and conveyed it to John J. Douglas. April 6, 1875, Douglas borrowed $10,000 of Roche, the appellant, for which he gave his note, due in ten years, with interest at nine per cent per annum, payable semi-annually. To secure this note, Douglas gave a trust deed of the Butler lot to Murray F. Tuley, dated April 6, 1875. About June 1, 1876, Douglas commenced the erection of a building on the Butler lot, and made use of the party wall for the west wall of his building. The building erected by Douglas was of the same height and length as the party wall. About September 1, 1876, Douglas abandoned work upon the building. At this time the walls were up, the roof on and the joists set, but there were no floors or stairs, doors or windows, plastering or partitions. The building remained in this condition until December 14, 1876, when the bill in this case was filed.

The bill sets forth substantially the foregoing facts, and the further fact that Ullman had not been paid one-half the value of the party wall, and asks to have the defendants restrained from any further use of the wall until such payment was made. A temporary injunction was granted, according to the prayer of the bill. In the meantime Douglas had defaulted in his interest on the note to Roche, who elected to declare the whole amount of principal and interest to be due and payable, and directed Tuley to advertise and sell under the trust deed. Tuley proceeded accordingly, and on the 9th day of January, 1877, as trustee under the deed, he sold and conveyed the Butler lot to Roche. Roche took possession of the property, and in order to avoid delay in

completing the building, entered into a stipulation, in pursuance of which the injunction was dissolved upon Roche giving a bond to Ullman in the penal sum of $2500, conditioned to pay Ullman whatever sum, if any, the court should decree that he should pay for said party wall, or the amount of any lien which the court should decree in favor of Ullman upon the lot or building, or any part of either, for any portion of the cost of the wall. Roche gave the bond, and the injunction was dissolved on the 28th of February, 1877. Roche then proceeded to complete the building by laying the floors, putting in the doors and windows, and plastering the first story, and has ever since owned and occupied the premises. It was agreed that the market value of the wall, when used by Roche, was $1372.69. In February, 1881, the complainant filed a supplemental bill, setting forth the facts which had occurred subsequent to the filing of the original bill. Answers were duly filed to the original and supplemental bills.

Upon the above facts the court decreed that the covenants in the party wall agreement were binding upon Roche *personally;* that he was *personally* liable to the complainant for the value of the party wall, and interest from May 1, 1877, and that the complainant was entitled to a lien therefor upon the east half of the west half of said lot 2. A personal decree was entered against Roche, and a sale ordered in case of non-payment, as in foreclosure proceedings.

Messrs. STILES & LEWIS, for the appellant:

The covenant to pay for half the expense of the wall did not bind an assignee or grantee, because there was created no privity of estate or tenure, which is essential. 1 Smith's Leading Cases, 171, 172; 2 Washburn on Real Prop. (3d ed.) 262; *Hurd* v. *Curtis,* 19 Pick. 459; *Balby* v. *Wills,* 3 Wils. 29.

Privity of estate arises when one having an estate in land grants out of that some estate or interest to another, and yet reserves to himself some estate or interest in the same land,

and that privity will continue indefinitely between the successive owners of the interests so granted or reserved. *Hurd* v. *Curtis,* 19 Pick. 459 ; Bouvier's Law Dictionary.

The covenant was not of a nature to run with the land. It being for the payment of money only, it may be performed anywhere, and its performance or non-performance can in no way affect the use or enjoyment of the land. *Dolph* v. *White,* 12 N. Y. 296 ; *Glenn's Exr.* v. *Canby,* 24 Md. 127 ; *Block* v. *Isham,* 28 Ind. 37 ; *Sherred* v. *Cisco,* 4 Sandf. 480 ; *Patridge* v. *Gilbert,* 15 N. Y. 601 ; 2 Washburn on Real Prop. 334.

The obligation of all contracts is ordinarily limited to those by whom they are made, and if privity of contract be dispensed with, its absence must be supplied by privity of estate. *Cole* v. *Hughes,* 54 N. Y. 444 ; *Scott* v. *McMillan,* 76 id. 141 ; *Hurd* v. *Curtis,* 19 Pick. 459 ; *Harsha* v. *Reid,* 45 N. Y. 415 ; *Keppel* v. *Bailey,* 2 Myl. & K. 517. See, also, *Ingles* v. *Bringhurst,* 1 Dall. 341 ; *Hart* v. *Rucker,* 5 S. & R. 1 ; *White* v. *Snyder,* 2 Miles, 395 ; *Davids* v. *Harms,* 9 Barr, 501 ; *Todd* v. *Stokes,* 10 id. 195 ; *Weld* v. *Nichols,* 17 Pick. 538 ; *Rawson* v. *Bell,* 46 Ga. 19.

But conceding that the covenant is one that runs with the land, it was broken before the assignment to Roche, by the full use of the party wall. *Tillotson* v. *Boyd,* 4 Sandf. 516 ; Taylor's Landlord and Tenant, 449 ; Woodfall's Landlord and Tenant, 109, 208, 369 ; 1 Smith's Leading Cases, 204.

That Ullman has no lien upon Roche's lot or building for the value of the party wall, see *Goodrich* v. *Lincoln,* 93 Ill. 359 ; *Curtis* v. *White,* Clark's Ch. 389 ; *Ingles* v. *Bringhurst,* 1 Dall. 341 ; *Weld* v. *Nichols,* 17 Pick. 538.

Mr. WILLIAM H. KING, Mr. FREDERICK W. PACKARD, and Mr. CHARLES WESTON, for the appellee :

The effect of the agreement was to create an easement upon each party's lot in favor of the other. *Keteltas* v. *Penfold,* 4 E. D. Smith, 122.

It was an incorporeal hereditament, and the covenant connected with it bound and was a charge upon the land. *Keteltas* v. *Penfold*, 4 E. D. Smith, 122; *Weyman's Exrs.* v. *Ringold*, 1 Bradf. 55; *Breckinridge* v. *Ingram*, 2 Ves. 663; *Brewster* v. *Kitchell*, 1 Ld. Raym. 317; *Balby* v. *Wells*, 3 Wils. 26; *Mayor of Coughton* v. *Pattison*, 10 East, 130; *New Ipswich Factory* v. *Batchelder*, 3 N. H. 192; Platt on Covenants, 469; 2 Crabb on Real Prop. 1088; 1 Smith's Leading Cases, 93.

That this covenant is one which runs with the land and binds the assignee, see *Savage* v. *Mason*, 3 Cush. 504; *Morse* v. *Aldrich*, 19 Pick. 452; *Derisby* v. *Custance*, 4 T. R. 75; *Kingdon* v. *Nottle*, 4 Maule & Selw. 53; *Norman* v. *Wells*, 17 Wend. 147; *Grey* v. *Cuthbertson*, 2 Chit. 482; *Platt* v. *Eggleston*, 20 Ohio St. 419; *Wickersham* v. *Orr*, 9 Iowa, 259; *Osgood* v. *Howard*, 6 Maine, 452; *Russell* v. *Richards*, 10 id. 429; *Hilbourne* v. *Brown*, 12 id. 162; *Smith* v. *Benson*, 1 Hill, 576; *Renick* v. *Kern*, 14 S. & R. 267; *Ricker* v. *Kelley*, 1 Maine, 117; *Clement* v. *Dustin*, 5 id. 9; *Wells* v. *Bannister*, 4 Mass. 415.

Any deed that will convey the land will convey the covenants running with the land. *Brady* v. *Spurch*, 27 Ill. 482.

A covenant runs with the land when either the liability for its performance, or the right to enforce it, passes to the assignee of the land. *Dorsey* v. *St. Louis, Alton and Terre Haute R. R. Co.* 58 Ill. 67; *Sterling Hydraulic Co.* v. *Williams*, 66 id. 397; 1 Smith's Leading Cases, part 1, 133; *Trull* v. *Eastman*, 3 Metc. 121; *Woodruff* v. *Trenton Water Power Co.* 2 Stockt. Ch. 489; *Cole* v. *Hughes*, 54 N. Y. 446.

There is a privity of estate through the medium of the easement which is created by the covenant. *Weyman's Exrs.* v. *Ringold*, 1 Bradf. 41.

When the benefit and burden of a contract are inseparably connected, both must go together, and liability to the burden is a necessary incident to the right of the benefit. *Norfleet*

v. *Cromwell*, 70 N. C. 641; 1 Smith's Leading Cases, 143; *Savage* v. *Mason*, 3 Cush. 318; *Coleman* v. *Coleman*, 7 Harris, 100.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

By the agreement between Butler and Ullman the latter was authorized to build a party wall, the east half of which was to rest on Butler's part of the lot, and the west half on Ullman's, and it was expressly provided that when so built, Butler, upon payment of one-half the cost of its construction, should have the right to use the same, or such part of it as he might need, as a party wall for any building he might erect on his part of the lot. The legal effect of this agreement, upon its performance, was to give to each of the parties an easement on the other's lot for the purpose of support of their respective buildings, which became appurtenant to their several estates, and as such would pass to their respective assignees by any mode of conveyance that would transfer the land itself. That such would have been the effect of the agreement had it been executed on the part of Butler, is not questioned. But it is claimed that Roche, his assignee, occupies a better position with respect to the agreement than Butler, through whom he claims,—that while he may avail himself of all its benefits, he is relieved of all obligations to perform its burdens. If this be the correct view, it must be conceded it results solely from the fact the parties to the agreement had no power to impose its burdens as well as its benefits upon their assignees, for nothing can be clearer than it was their intention to do so, and it is equally clear the terms expressive of such intention are altogether appropriate and sufficient for that purpose, if, as matter of law, they had power to thus bind their assignees. The language of the agreement expressive of such intention is: "It is also further agreed, that all the covenants and agreements herein contained shall be binding upon each party, their heirs, execu-

tors, administrators and assigns, and grantees of the said parties of the first and second part, and shall be so construed as to run with the land." There can be no mistaking the object and purpose which the parties sought to accomplish by this provision, and appellant, having bought with constructive, and doubtless actual, notice of it, must be presumed to have intentionally assumed the burdens as well as the benefits of the agreement. The duty of paying for one-half the wall being a continuing liability resting upon the owner of the lot in his character of owner, and this not having been paid at the time of appellant's purchase, it is to be presumed that in becoming a purchaser, and thus assuming the relation of owner himself, he paid less for the property by the amount of the incumbrance than he otherwise would have done. Such being the case, it would now be highly inequitable to permit him to enjoy the benefit of the wall without reimbursing Ullman for one-half its cost.

But outside of the equitable view here suggested, we think the law is with appellee on other grounds. While the authorities are not altogether harmonious with respect to the legal effect of covenants and agreements providing for the construction of party walls between adjacent proprietors, yet we think the decided weight of authority establishes the position that an agreement under the hands and seals of such parties, containing covenants and stipulations like those found in the instrument we are considering, will, when duly delivered and acted upon, as was done in this case, create cross-easements in the respective owners of the adjacent lots with which the covenants in the agreement will run, so as to bind all persons succeeding to the estates to which such easements are appurtenant. This being so, it follows that Roche, in succeeding to the east half of the lot, whereby he acquired an easement in the west half, became bound for the performance of the covenant to pay one-half the cost of constructing the wall. We do not deem it necessary to enter upon a review

of the authorities upon this subject, but will content ourselves with a reference to the following cases, which are believed to sustain the conclusion reached: *Keteltas* v. *Penfield*, 4 E. D. Smith, (N. Y.) 122; *Savage* v. *Mason*, 3 Cush. (Mass.) 504; *Mame* v. *Cumston*, 98 Mass. 317; *Standish* v. *Lawrence*, id. 111; *Dorsey* v. *St. Louis, Alton and Terre Haute R. R. Co.* 58 Ill. 68; *Sterling Hydraulic Co.* v. *Williams*, 66 .id. 397; *Rindge* v. *Baker*, 57 N. Y. 209; note to *Spencer's case*, Smith's Leading Cases, (6th Am. ed.) 211; *Weyman's Exrs.* v. *Ringold*, 1 Bradf. 40; *Giles* v. *Dugro*, 1 Duer, 331.

The *decision* in *Goodrich* v. *Lincoln*, 93 Ill. 359, does not conflict with the conclusion reached in the present case.

We concede the general doctrine, as contended for by appellant's counsel, that where the relation of landlord and tenant does not exist, only such covenants as are beneficial to the estate will run with the land, but we do not regard the doctrine as applicable to cases where adjacent proprietors have, as in the present case, so contracted as to create mutual easements upon each other's estates, and entered into covenants with respect to the same. The new relation thus created being of an intimate character, involving reciprocal duties with respect to each other's estates, may be regarded as an equivalent for the absence of tenure, so as to give effect to all covenants without regard to whether they are beneficial or onerous. However this may be, it is clear the rule contended for does not seem to be applied in this class of cases.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*