Holden v. Gibson.

CHARLES C. P. HOLDEN
v.
EMERETTA A. GIBSON.

1. PARTY WALL.—In case of party walls, the center of the wall, corresponding with the line between the lots, is the line dividing the estates of the adjoining proprietors and the instant the wall is built, each becomes the owner of his part to the center of the wall.

2. SAME—RIGHT TO COMPENSATION—COVENANT PERSONAL TO BUILDER.—Where an owner of land builds a party wall under an agreement with the adjoining owner, that when the latter shall use it he will pay the expense of his portion of the wall, the right to compensation is personal to the builder and does not pass by a grant of his land. Under the party wall agreement in this case, the covenant in question was personal to the builder.

APPEAL from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding. Opinion filed May 29, 1885.

On the third day of July, 1872, Charles C. P. Holden and Thomas R. Armstrong, the former being the owner in fee of lot twelve, and the latter of the adjoining lot eleven in Rogers' subdivision, etc., in Chicago, executed, under their hands and seals, the following party wall agreement:

"This agreement, made this third day of July, A. D. 1872, between Charles C. P. Holden and Thomas R. Armstrong, of the city of Chicago, in Cook county, in the State of Illinois, witnesseth, that, whereas, said Holden is the owner of lot

twelve, and the said Armstrong is the owner of the adjoining lot ele· e ı, in E. K. Rogers' subdivision of lots one and two, in block five, in Duncan's addition to Chicago, and block one in the Canal Trustees' subdivision of the west half and the west half of the northeast quarter of section seventeen, in township thirty-nine, north, range fourteen, east of the third principal meridian; and said Holden is about to erect a building upon his property, and said parties are anxious to have a party wall on the line of and resting one half thereof on the property of each of them.

"They therefore agree that said Holden may, in the erection of the improvements on said property, place one half in width of the wall of his building upon the property of said Armstrong; that said wall shall be suitable for a party wall, and shall continue to be a party wall forever.

"And the said Holden and Armstrong agree to keep, maintain, repair and rebuild said wall whenever necessary, at the equal joint expense of each. Said wall, when first built, is to be built and paid for by said Holden alone, and whenever said Armstrong uses all, or any part of said party wall, he shall first pay to said Holden the cost of one half of the part of said wall, such cost to be computed upon the basis of $15 per M. for brick, $20 per cord for rubble stone, $27 per cord second course dimension stone, and $32 per cord for lower footing dimension stone, and eighty-eight cents per foot for coping laid in said wall.

"The quantity of each kind of material in the half of the said wall shall be fixed upon by the certificate of the architect and builder of said Holden, if he can produce the same; if not, then such quantities may be fixed upon by arbitrators, chosen by each party, but in all cases said Armstrong shall not use said wall, or any part thereof, until he has actually paid the said Holden for the one half thereof.

"The provisions of this agreement shall be deemed and taken to be covenants running with the land, and shall be binding upon the executors, heirs, devisees and assigns of said parties, and shall bind all persons having any interest or estate in said land.

"In witness whereof we have hereunto set our hands and seals the day and year first above written.

" CHARLES C. P. HOLDEN, [SEAL.]

" THOS. R. ARMSTRONG,    [SEAL.]"

Shortly after the execution of said contract, Holden proceeded to erect said party wall and completed the same March 1, 1873.  Two deeds of trust were afterward executed by Holden, conveying said lot twelve to a trustee as security for certain indebtedness, and on foreclosure of said deeds of trust, Emeretta A. Gibson, the appellee, became the purchaser and received a trustee's deed conveying said lot to her, said deed bearing date May 17, 1876.  By mesne conveyances the title to said lot eleven became vested in John H. Kedzie prior to the commencement of this suit.

On the 11th day of December, 1883, Kedzie, desiring to erect a building on said lot eleven, and to use a portion of said wall according to said party wall agreement, filed his bill of interpleader alleging that both the appellee and Holden claimed the compensation to be paid by him, for the portion of the party wall which he desired to use, and offered to pay said money into court, and prayed that the appellee and Holden be required to interplead and litigate between themselves, the question as to which of them was entitled to receive said money.

A decree was thereupon entered, requiring the appellee and Holden to interplead; and proper pleadings having been filed, the court found the amount to be paid by Kedzie, under the party wall agreement, for the portion of the party wall which he proposed to use, to be $1,378.28, and ordered that he be allowed to deposit that sum in court in full of his liability under the agreement, which was done.

The cause afterward coming on to be heard as between the appellee and Holden, the court found that appellee was entitled to said money and entered a decree ordering the payment of the sum to her.  From that decree, Holden has appealed to this court.

Mr. CHARLES F. WHITE and Mr. M. L. WHEELER, for ap-

pellant; that the agreement for the payment of the money was not a covenant running with appellant's lot as a benefit thereto, cited Bally v. Wells, 3 Wils. 29; Vernon v. Smith, 5 B. & Ald. 1; 2 Sugden on Vendors, 92; Spencer's Case, 5 Rep. 16; 1 Washburn on Real Property, 436–8; 2 Washburn on Real Property, 263; Glenn v. Canby's Ex'rs, 24 Md. 127; Keppel v. Bailey, 2 Mylne & K. 517; Masury v. Southwick, 9 Ohio St. 340; Cole v. Hughes, 54 N. Y. 444; Hart v. Lyon, 90 N. Y. 663; Bloch v. Isham, 28 Ind. 37; Joy v. Boston Penny Sav. Bank, 115 Mass. 60; Weld v. Nichols, 17 Pick. 543; Hurd v. Curtis, 19 Pick. 459; Wheeler v. Schad, 7 Nev. 204.]

Each had title in severalty to the one half on his lot with an easement of support in the other half: Ingals v. Plamondon, 75 Ill. 118; Matts v. Hawkins, 5 Taunt. 20; Cubett v. Porter, 8 B. & C. 257; Bloch v. Isham, 28 Ind. 37; Ingals v. Plamondon, 75 Ill. 118; Hedricks v. Stark, 37 N. Y. 108; Eno v. Del Vecchio, 4 Duer, 61; Sherred v. Cisco, 4 Sandf. 480; Thompson v. Summerville, 16 Barb. 473; Partridge v. Gilbert, 15 N. Y. 614; Brooks v. Curtis, 50 N. Y. 639; Joy v. Boston Penny Sav. B'nk, 115 Mass. 60; Goodrich v. Lincoln, 93 Ill. 359.

Messrs. KING & PACKARD, for appellee; cited Roche v. Ullman, 104 Ill. 11; Maine v. Cumston, 98 Mass. 317; Keteltas v. Penfold, 4 E. D. Smith, 122; Weyman's Ex. v. Ringold, 1 Bradford, 55; Burlock v. Peck, 2 Duer, 97; Hurd v. Curtis, 19 Pickering, 462; Platt v. Eggleston, 20 Ohio, 419; Brady v. Spurck, 27 Ill. 482; Sterling H. Co. v. Williams, 66 Ill. 397; Spencer's Case, 1 Smith's Leading Cases, Part I, 133; Savage v. Mason, 3 Cushing, Mass., 504; Butterfield v. Smith, 11 Ill. 486; Savage v. Mason, 3 Cushing, 504.

BAILEY, J. The only question in this case is, whether, under the party wall agreement between Holden and Armstrong, the right to compensation for one half of the cost of the party wall was personal to Holden, or passed by his grant of lot twelve to the appellee. There can be no doubt that the cov-

enant to pay for one half of the wall before using it, was a covenant running with Armstrong's lot, lot eleven, so as to become obligatory upon Kedzie, his grantee. This is settled by the case of Roche v. Ullman, 104 Ill. 11, where this precise question was decided, and the rule there laid down is not questioned here, Kedzie having admitted his liability, and paid into court the sum of money found to be due from him under the covenant. But to sustain the decree, it must be held that the benefit secured to Holden by the covenant run with lot twelve, for otherwise there is no priority, either of contract or estate, between the appellee and Armstrong, or his grantee, Kedzie.

In form, at least, the covenant would seem to be personal to Holden. It provides that, " whenever said Armstrong uses all or any part of said party wall, he shall first pay to said Holden the cost of one half of the part of said wall," etc.; and again, " said Armstrong shall not use said wall, or any part thereof, until he has actually paid said Holden for the one half thereof." But reliance is placed upon the clause of the instrument which stipulates that the provisions of the agreement shall be deemed and taken to be covenants running with the land, and be binding upon the executors, heirs, devisees and assigns of the parties, and all persons having at any time any interest or estate in said land. Whatever force may be given to this clause, we think it clear that it can only be held to have the effect of making each of the covenants contained in the instrument run with that portion of the land only to which they severally relate and apply. Thus, if a particular covenant relates only to lot eleven, said clause should not be so construed as to make such covenant run with lot twelve.

The covenant by Armstrong to pay Holden for one half of the party wall would seem to be a covenant relating exclusively to lot eleven. The wall being one half on each lot, the half standing on lot eleven, the instant it was built being a permanent addition to that lot, became the property of Armstrong and passed to his grantees. It is well settled in this State, whatever may be the rule elsewhere, that in case of party walls, the

center of the wall corresponding with the line between the lots is the line dividing the estates of the adjoining proprietors, and that the instant the wall is built, each becomes the owner of his part to the center of the wall. See Ingals v. Plamondon, 75 Ill. 118. Armstrong, then, in covenanting to pay for one half of the wall, covenanted merely to pay for a structure to be erected on his own lot, and of which the title, as soon as it was built, would be in him. The money to be paid had no reference to lot twelve, and was in no sense a consideration for any burden to which that lot was to be subjected. It is true the owner of lot eleven obtained, by virtue of the party wall agreement, an easement of support, that is, the right to have his building supported by means of the half of the wall standing on lot twelve, but no part of the money which Armstrong covenanted to pay was the consideration for that easement, as that was fully and exactly compensated by a corresponding easement acquired by the owner of lot twelve in lot eleven. While the covenant then, was clearly a covenant running with lot eleven, we see no principle upon which it can be held to run with lot twelve.

It is true that the decisions are far from being harmonious on this subject, but it will be found that most, if not all the cases which hold that the right of the covenantee to compensation runs with his land and passes to his grantee, are based upon the theory that, until compensation is made, the covenantee is the owner of the entire wall, which, of course, would pass to his grantee as appurtenant to his lot. On that theory, the structure for which the covenantor undertakes to make compensation, is, until paid for, a part of the covenantee's lot, and his title or that of his grantee is only divested by the performance of the covenant. Under these circumstances, it would logically follow that the right to compensation should run with the title to the structure to be paid for.

In Main v. Cumston, 98 Mass. 317, the grantee of a party who had built a wall under a party wall agreement, similar to the one in the case at bar, brought suit against the owner of the adjacent lot, for the cost of one half of the wall, and the court, in sustaining his right to bring the action, hold that the

Holden v. Gibson.

property in the whole wall passed to him by the deed under which he claimed title, and that he had a right to maintain the whole wall as a part of his house, until the owner of the adjacent lot made use of it. But in Joy v. Boston Penny Savings Bank, 115 Mass. 60, where the party wall contract was not under seal, it was held that grantee of the party building the wall could not recover, the decision being placed upon the ground that, the contract not being under seal, the plaintiff's grantor acquired no interest in the adjoining land, and retained no title in that part of the wall which extended beyond his own line.

In New York, several cases decided by courts of inferior jurisdiction are reported, in which it is held that under party wall agreements like the present, the right to compensation for one half of the cost of the wall runs with the land, and passes to the grantee of the covenantee. The case most nearly in point is that of Weyman's Executors v. Ringold, 1 Bradford, 40, decided by the Surrogate Court of the city of New York. That decision rests upon the theory that the adjoining owners became tenants in common of the party wall, and the land on which the same was built, and it was held that as the covenantee, in conveying, " passed all his title to the entire wall, the right to use the wall could be required of its owner, the assignee, only upon the terms of the covenant, payment of its value to the covenantee or his assigns." In Burlock v. Peck, 2 Duer, 99, decided by the Superior Court of the city of New York, it was held that under a similar party wall agreement, the entire party wall, when built, became the sole property of the party building it, and as such, passed to his grantee, and that the owner of the adjoining lot could appropriate to his own use the grantee's property in the wall only by paying him one half of its value.

Directly the contrary conclusion was reached in New York by the Commission of Appeals, in Cole v. Hughes, 54 N. Y. 444, in which it was held that, where an owner of land builds a party wall under an agreement with the adjoining owner, that, when the latter shall use it, he will pay the expense of his portion of the wall, the right to compensation is personal

to the builder, and does not pass by a grant of his land. This same rule was again laid down by the Court of Appeals in Hart v. Lyon, 90 N. Y. 663, and thus seems now to be the settled law of that State.

We are of the opinion, both from reason and authority, that the covenant in question was personal to Holden, and that he alone is entitled to payment for one half of the cost of said party wall. The decree will therefore be reversed, with directions to the court below to enter a decree directing the payment to said Holden, of the money paid into court by said Kedzie, and that the appellee pay the costs of the suit.

Decree reversed.