### John Malina, Appellee, v. Edward Oplatka and Emil Reinish, Appellants.

### Gen. No. 26,252.

1. ACTION—*what determines whether action is ex contractu or ex delicto*. Whether an action is *ex contractu* or *ex delicto* does not depend upon the understanding of counsel or of the trial court, nor upon the form of the judgment rendered, but must be wholly determined from the pleadings.

2. ACTION—*when action for damages for excavating below party wall is ex contractu*. A statement of claim which recited the making of a party-wall agreement between the predecessors in title of plaintiff and defendants and alleged that as the result of improper

excavating by defendants the wall settled, making it necessary for plaintiff to make certain repairs "all of which work became necessary and was done to minimize the damages suffered by plaintiff by reason of the wrongful acts of the defendants," set up a cause of action *ex contractu*, and an affidavit of merits admitting the party-wall agreement, denying its violation, and denying that defendants excavated below the footings of the wall or that the injury to plaintiff's building was due to any acts of defendants joined issue on that theory.

3. MUNICIPAL COURT OF CHICAGO—*when action for breach of contract rights in party wall is within court's jurisdiction.* An action for damages in the sum of $5,006, resulting from a breach of the contract rights of plaintiff in a party wall between his building and that of defendants, is in the nature of a common-law action of assumpsit and is within the jurisdiction of the municipal court of Chicago.

4. PARTY WALLS—*when evidence sufficient to sustain finding as to cause of plaintiff's damages.* In an action *ex contractu* for damages to plaintiff's building by breach of a party-wall agreement by defendants, evidence examined and *held* to sustain the finding that such damages were caused by changes made by defendants upon their premises.

5. PARTY WALLS—*what is right of adjacent owner as to use of wall.* Each adjacent owner of a party wall has the right to its use in the improvement of his property, but at his own peril, so far as injury may result therefrom to his neighbor.

6. PARTY WALLS—*what is measure of damages for injury to building by making of improvement on adjoining property.* In an action *ex contractu* for damages sustained to plaintiff's building by reason of alterations made upon defendants' adjoining premises in violation of a party-wall agreement, the measure of damages is the difference in value of the property in question before and after the making of the improvement causing the injury.

TAYLOR, J., dissenting.

Appeal from the Municipal Court of Chicago; the Hon. GEORGE J. COWING, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1920. Affirmed. Opinion filed December 21, 1921. Rehearing denied January 4, 1922.

WINSTON & LOWY, for appellants.

ROBERT W. DUNN, for appellee.

MR. JUSTICE THOMSON delivered the opinion of the court.

By this appeal the defendants seek to reverse a judgment for $2,500, recovered by the plaintiff in the municipal court of Chicago.

The plaintiff and the defendants were the owners of adjoining pieces of property, each with a frontage of 25 feet on Chicago avenue in the City of Chicago, and each being improved by a four-story building, these buildings being about 40 years old. In the year of 1887, the then owners of these two pieces of property entered into a party-wall agreement and subsequently the wall in question was built, one-half of the wall being on one lot and one-half on the other. This wall was the division wall of the two buildings above referred to. In March, 1917, the plaintiff put a modern store front in his building and in making this improvement he made some changes in the support of his front building wall. In the early summer of 1918, the defendants undertook to improve their property. They acquired title to some vacant property, with a 25-foot frontage on the side opposite to that on which the plaintiff's property was located, and proceeded to put up a new building with a 50-foot frontage. It was the plaintiff's contention that in making this improvement the defendants deepened the basement in their building, located contiguous to the party wall, and in doing so excavated below the party-wall foundation, as a result of which, that wall settled some 4 inches throughout its length from front to back and also moved over an inch or more away from the plaintiff's building, resulting in the cracking of the front of the plaintiff's building, throwing the floors and the window and door openings out of line and otherwise damaging plaintiff's property.

In support of this appeal the defendants contend, first, that the action brought by the plaintiff was not within the jurisdiction of the municipal court, their position being that the action was an action on the case in which the plaintiff sought to recover damages

in excess of $1,000.  The question of whether the action was *ex contractu* or *ex delicto* does not depend upon the understanding of counsel or of the trial court nor upon the form of the judgment rendered, but that question must be determined wholly by the pleadings. *Gentry v. Purcell*, 84 Ind. 83; *Raymond v. Toledo, St. L. & K. C. R. Co.*, 57 Ohio St. 271; *Atchison, T. & S. F. R. Co. v. Long*, 5 Kan. App. 644; *Joyce v. Murnaghan*, 17 Mo. App. 11.  The statement of claim filed by the plaintiff recited that formerly one Boddeker and wife owned lot 8, title to which, by mesne conveyances had come to be in the plaintiff, and that one Degenhardt and wife had formerly owned lot 7, title to which by mesne conveyances had come to be in the defendants; that on February 1, 1887, the former owners above named had entered into a party-wall contract which was set forth in full in the statement of claim.  This contract recited that whereas the respective parties were owners of the adjoining lots referred to and whereas it was the desire of the Degenhardts that a party wall be built so that one-half of the wall would stand on one lot and one-half on the other lot, and whereas it was their intention to erect a building on their property, using this wall as the west wall of said building, therefore, it was mutually agreed by the parties that the said Degenhardts should build the party wall referred to, of a specified thickness with the center line of the wall on the lot line; and it was further agreed that the Boddekers should have the right to use the party wall in question along its entire length, and both above and below the ground, in connection with any building which they might later erect, provided that before doing so they should pay one-half of the value of the party wall, or so much thereof as they might use, according to the cost price of the wall at the time the Boddekers might desire to use it.  The parties further agreed that in case either of them desired to extend the wall they might do so and the other

party might have the privilege of using it on conditions similar to those stipulated with reference to the original wall and, further, that in case any repairs might be needed in the future, the cost should be borne by them equally. It was further provided that the agreement of the parties should be perpetual and should at all times be considered as a covenant running with the land. After reciting this agreement, the statement of claim set forth that following the execution of the agreement the Degenhardts built the wall and afterwards the plaintiff's predecessor in interest built a building on his lot and made use of the wall under the terms of the agreement. It was then alleged that thereafter, the defendants, "contrary to their duty and obligation in the premises to use and treat said party wall as a structure for the common benefit and convenience of both of the tenements which it separates," proceeded to deepen the foundations under their building and excavated below the footings of the foundations of the party wall without properly supporting them, as a result of which, the wall settled and was loosened from the floors and roof of the plaintiff's building, resulting in the damages complained of, which were set forth. It was further alleged that although requested in writing to do so, after the wall began to settle, the defendants failed and neglected to reinforce it and restore the plaintiff's building so far as possible, whereupon, the plaintiff was obliged to spend $506 in the rebuilding of piers, jacking up the front of the building, patching up cracks in the walls, patching the roof, etc., reciting in detail the things the plaintiff alleged he had done in an effort to repair his damage, "all of which work became necessary and was done to minimize the damages suffered by plaintiff by reason of the wrongful acts of the defendants." The statement of claim alleged damages to the plaintiff's building in the sum of $4,000 and damages to his business, during the period of repairs, in the sum of $500,

wherefore, the plaintiff claimed damages in the total sum of $5,006.

By their affidavit of merits the defendants admitted the existence of the party-wall agreement referred to in the plaintiff's statement of claim, but alleged that the agreement contained no provision as to the manner in which any alterations to the party wall were to be made, except that the expense of any repairing or rebuilding was to be borne by the parties, equally. They further alleged that there had been no violation of the party-wall agreement by the defendants; that they had not excavated below the footing of the party wall nor deepened the foundation under their building and that the damages complained of by the plaintiff were not caused by any act on the part of the defendants but by the plaintiff's own negligence, in connection with the alteration of his store front, reference to which has been made above.

In our opinion the plaintiff's statement of claim set up an action *ex contractu* and the affidavit of merits filed by the defendants joined issue on that theory. It is clear that the plaintiff's rights grew out of the party-wall agreement made by his predecessor in interest with the predecessor in interest of the defendants, under which each of the parties was possessed of an easement on the lot of the other for the support of their respective buildings, which by the terms of the contract became appurtenant to the several estates of plaintiff and defendants, which agreement passed to their respective assignees and came ultimately to be in the parties to this suit. *Roche v. Ullman,* 104 Ill. 11; *Field v. Leiter,* 118 Ill. 17. This action was for damages resulting from a breach of these contract rights of the plaintiff which is in the nature of a common-law action of assumpsit. This being a contract action, it follows that it was one in which the municipal court of Chicago had jurisdiction.

The defendants further contend that the statement of claim did not set up a cause of action. This con-

tention of the defendants seems to be based on the theory that the statement of claim set up an action *ex delicto*. In our opinion, as above stated, the statement of claim set forth a good cause of action *ex contractu*. But, the defendants contend that even if it be considered that the statement of claim sets forth a good cause of action, the plaintiff failed to prove his case by a preponderance of the evidence. There was considerable testimony introduced by the respective parties and in many respects it was quite contradictory. It would serve no useful purpose to recite the testimony here in detail. We have examined it carefully and have reached the conclusion that it cannot be said that the finding of the trial court, before whom the case was tried, without the intervention of a jury, was against the manifest weight of the evidence. On the contrary, it would seem that the evidence amply supports the finding of the court to the effect that the testimony supported the allegations set forth by the plaintiff in his statement of claim. One of the main contentions of the defendants was that the damages occasioned to the plaintiff's building were not the result of their operations in the erection of their new building but rather were caused by the changes which the plaintiff had made in his own building, but in our opinion the evidence establishes the contrary. The plaintiff's property was to the west of that of the defendants. When the plaintiff put in his new store front early in 1917, an iron beam which he put in his front wall at the top of the first story was supported on its west end by a party wall between the property of the plaintiff and that adjoining his, to the west, while the east end of the beam was supported by the party wall between the plaintiff's property and that of the defendants and also by a column located a few feet away from the latter party wall. Subsequent to the improvements of the plaintiff's store front, his building showed no effect nor was any change noticeable in either of the party walls, but at the time of

Malina v. Oplatka et al., 223 Ill. App. 236.

the work done by the defendants, complained of above, a year and a half later, the party wall between the property of the plaintiff and that of the defendants settled and cracked the stone pier under the column adjacent to the party wall, which in part supported the iron beam above referred to.  But, the party wall to the west of the plaintiff's building which alone carried the weight of the west end of the beam showed no settlement.  The fact that the settlement of the party wall in question was not caused by the changes made by the plaintiff to the front of his building is not only indicated by the fact that the walls showed no settlement for nearly a year and a half after the plaintiff put in his new building front, but by the further fact that when the settlement did develop at the time of the new building operations of the defendants, that settlement was not confined to the front part of the party wall but extended practically uniformly throughout its length from front to back.

It appears from the evidence that the operations which apparently caused the settling of this party wall were carried on in the defendants' basement, while the old building was still standing and being used, and that the plaintiff was unaware of these operations until evidence of the settling began to appear, when he made an investigation and discovered the work in question.

This is not the case of an adjoining property owner who has no right to lateral support against his neighbor, except to his soil in its natural condition, where he is obliged to protect his own structure against damage in case of excavation by his neighbor.  Even if it were, the evidence establishes that the defendants gave the plaintiff no notice of the work they intended to do contiguous to the plaintiff's property.  Each adjacent owner of a party wall has the right to its use in the improvement of his property, but at his own peril, so far as injury may result therefrom to his neighbor. *Brooks v. Curtis,* 50 N. Y. 639; *Daly v. Grimley,* 49 How. Pr. (N. Y.) 520.

The defendants further contend that the plaintiff's building was increased in value by the improvements which the defendants erected on their property and also that depreciation in value was not the proper measure of damages, citing *Schroeder v. City of Joliet*, 189 Ill. 48; *Fitzsimmons & Connell Co. v. Braun*, 199 Ill. 390. In the *Schroeder* case, the only question raised was whether the measure of damages was the difference in market value of the lots in question before and after the improvements were made or whether the defendant was liable although the improvement had increased the value of the lots. The lower court held that the defendant was liable for the injury complained of to the plaintiff's lots in consequence of defendant's act in removing the lateral support, regardless of the improvement upon the lots. The Supreme Court held to the contrary and said that if the market value of the property had not decreased when the whole effect of the improvement was considered, there could be no damage and no recovery. In the *Fitzsimmons* case it was held that in an action for damages for injury caused by the defendant to the plaintiff's building, by the use of dynamite in excavating a tunnel, the measure of damages was the cost of repairing the building and restoring it to its former condition. This case was expressly overruled by our Supreme Court in *Peck v. Chicago Rys. Co.,* 270 Ill. 34, holding that the measure of damages was the difference in value of the property in question before and after the making of the improvement, which was alleged to have caused the injury complained of. The latter decision was followed by this court in a similar situation presented in the case of *Bruno v. City of Chicago,* 214 Ill. App. 498. Both of the latter cases cited were tunnel cases but, in our opinion, the rule there laid down is applicable to the situation presented in the case at bar. The evidence in the record on the question of damages is conflicting. There was some evidence to the effect that as a result of the improve-

ment of the defendants' property, that of the plaintiff had been increased in value. There was other evidence to the effect that the injury to plaintiff's building had resulted in a depreciation in its market value amounting to between $4,000 and $5,000. The trial court took the view that the depreciation had not been so great as that and allowed the plaintiff $2,500.

We find no error in the record and therefore the judgment of the municipal court is affirmed.

*Affirmed.*

O'CONNOR, P. J., concurs.

TAYLOR, J., dissenting. This case was begun as an action in tort, the *ad damnum* being $6,000, and, therefore, not jurisdictionable by the municipal court. It was tried and judgment entered in the sum of $2,500, all on the theory that the matters involved were purely *ex delicto*. The trial judge before whom the cause was tried without a jury held as a proposition of law "that the evidence does not disclose any contractual obligation on the part of the defendants. If there is any liability at all, such liability must be based upon some violation or disregard of some duty which the defendants owe to the plaintiff or upon some negligence or carelessness on the part of the defendants." The question arises whether such being the history of the trial, as shown by the record, we are entitled to affirm the judgment. It may be that the evidence in the record would be sufficient to support the judgment if the cause had been tried as one *ex contractu*, still, as the cause was begun in tort and the jurisdiction of the court was objected to by counsel for the defendants in apt time, and the whole trial proceeded to judgment on the theory of negligence and not a breach of contract, I am of the opinion that the judgment ought not to stand. Further, the statement of claim, according to my analysis, does not purport to set up a breach of contract, and so does not support the judgment even if the evidence showed a breach of the party-wall contract.