JACOB WINDMILLER

*v.*

CLARK P. CHAPMAN.

*Filed at Springfield November 2, 1891.*

1. LEVY—*what constitutes.* To constitute a valid levy of a writ of attachment or execution, the property must be within the power and control of the officer when the levy is made, and he must take it into his possession in a reasonable time thereafter, unless a delivery bond is tendered, and in such an open, public and unequivocal manner as to apprise everybody that the property has been taken. He must so deal with the property as, without the protection of the writ, his acts would make him a trespasser.

2. Where the officer holding a writ of attachment enters the store where the goods are, but does not touch them or exercise any act of dominion or control over the same, and does nothing to prevent or hinder those in possession from their continued control of the property, and places no custodian in charge, but simply talks about what he intends to do, and finally leaves the store in company of one of the parties to see an attorney, this will not constitute a levy or possession of the goods by the officer.

3. PRACTICE—*refusing proposition assuming facts not supported by evidence.* The court trying a case without a jury may properly refuse a proposition submitted, when the evidence fails to establish the state of facts it assumes and upon which it is predicated.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Pike county; the Hon. CHARLES J. SCOFIELD, Judge, presiding.

Mr. R. W. MILLS, for the appellant.

Messrs. ORR & CRAWFORD, and Messrs. MATTHEWS & GRIGSBY, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

As disclosed by this record, the questions passed upon during the trial of this case in the circuit court were: First, was it agreed between the respective attorneys of the parties to the

suit, to waive a jury and try the issues of fact by the court; second, did appellant levy the writ of attachment in favor of Oakford & Fahnestock, and against Fishell & Co., which was in his hands, as sheriff, upon the stock of goods in controversy, before appellee purchased and obtained possession of it; third, is appellee a purchaser in good faith of the stock of goods in controversy. (*Chapman* v. *Windmiller,* 29 Ill. App. 393; *Windmiller* v. *Chapman,* 38 id. 276.) No question of law was raised upon the trial in the circuit court upon the first and third of these questions, and the affirmance of the judgment of the circuit court therefore finally disposes of them.

Appellant asked the court to hold, "that if, before the alleged purchase of the stock of goods in controversy by the plaintiff, the sheriff had been in possession of the goods under the Oakford & Fahnestock writ of attachment, and had been induced by a trick to part with the possession, and that Chapman had notice of the above facts, or sufficient information in regard to the existence of such a writ of attachment to induce a reasonably prudent man to make inquiry concerning the same, then Chapman could not afterwards acquire a title to the stock of goods that he could set up against the sheriff under that writ." But the court refused so to do, and the exception to this ruling preserves the question of law it involves for our consideration.

It is obvious that the ruling may be sustained, without regard to the abstract correctness of the legal proposition stated, if the evidence in the record does not establish the state of facts it assumes; and the contention of counsel for appellee is, that the evidence does not prove that appellant, as sheriff, had been in possession of the stock of goods in controversy under the Oakford & Fahnestock writ of attachment, before appellee purchased and obtained possession of it. The rule in regard to making a levy of a writ of attachment or execution is, "the property must be within the power and control of the officer when the levy is made, and he must take it into

his possession in a reasonable time thereafter, unless a delivery bond is tendered, and in such an open, public and unequivocal manner as to apprise everybody that the property has been taken in execution. He must so deal with the property, in order to constitute a good levy, as, without the protection of an execution, his acts would make him a trespasser." *Minor* v. *Herriford et al.* 25 Ill. 344; *Haveley* v. *Lowry,* 30 id. 446; *Davidson* v. *Waldron et al.* 31 id. 120.

The only evidence on the question of the levy of the Oakford & Fahnestock writ of attachment, and possession thereunder, is the following:

M. S. Darrah testified: "On December 31, 1886, I was deputy sheriff of this county, and I received this attachment writ *(Oakford & Fahnestock* v. *Fishell & Co.)*; first went down to Ferdinand's house and served the writ on Lizzie Fishell and demanded the property; she said she had none; about six or seven o'clock I went to the store and found the windows blinded and door locked; knocked at the door, and Albert Fishell opened the door, and I went in; he and Barney McGary were there, but will not be sure that Ferdinand was there; I told them I had a writ of attachment and was there to comply with the requirements of the law in the case; when I told them that, I know Ferdinand was present; I told them that I would not interfere with their business if they would give me a delivery bond; Ferdinand said, 'I will go and see our attorney;' Albert and McGary were still there; Albert said he would either give me a delivery bond or I could levy on the goods; as I had no blank with me, I proposed to go and get one while Ferdinand was gone after his attorney; Fishell said it was not necessary, as Orr could write one out in a few minutes; when Orr came he asked me what I wanted; I told him I had a writ of attachment; he said the goods were Anna Fishell's, and I replied that it made no difference,—they were the goods I had the attachment for, that I was there in possession and proposed to make the levy; he defied me to move the goods, and

I told him I proposed to do it; he asked me who was the attorney of plaintiff in the writ, and I told him J. W. Johnson; he said Johnson was a reasonable man, that the matter could be adjusted without any trouble, and proposed we all go over to Johnson's and fix it up; Orr proposed it, and Fishell seconded the motion; before I went out I said I wanted it understood that I was to be admitted again; they (Orr and Fishell) replied, in substance, that it would be all right; Orr, Albert Fishell and I went to Johnson's office; when we got there Orr opened the conversation in regard to what was going on there; Johnson told me that it was a trick, and that when I returned to the store I would find it locked; I went back and found the lights out and store locked; early next morning I came back to the store and met Albert Fishell; he said he was willing to go in, and would see me again; about eleven o'clock I met him again; he said they were considering whether they would open the door; he did not again say he was willing I should go in."

Clearly, here was no act dispossessing those in possession when the party entered the store-room. No act was done by Darrah as an act in taking possession. He exercised no act of dominion or control over the property, or the room in which it was, and did nothing to prevent or hinder those in possession from their continued dominion and control of the property. He placed no custodian in possession, and, in short, did nothing but talk about what he intended to do, until after he went to see Johnson. It is therefore impossible that trespass would have lain against him for what he then did if he had not had a writ. It is impossible that he could have had an actual possession without a physical disturbance of the possession of those in charge when he entered the store-room, there being no pretense that they abandoned or in any way voluntarily surrendered their possession. We think there was no error in the ruling of the circuit court upon this question.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*