JOHN MACKIN

*v.*

DWIGHT HAVEN, Trustee, *et al.*

*Opinion filed October 19, 1900.*

1. RIGHTS AND REMEDIES—*when heirs are liable for rent under ancestor's lease.* Heirs of the lessee in a party-wall lease which is under seal and which contains a clause binding the heirs, executors, administrators and assigns of each party, are liable as at common law for rent accruing under the lease, and can only escape such liability by pleading and proving *riens per descent.*

2. SAME—*effect of Statute of Frauds upon common law remedy against heirs.* Sections 11 to 14, inclusive, of the Statute of Frauds and Perjuries, are merely cumulative to the common law remedy against heirs, and furnish additional remedies to all creditors of the ancestor, including specialty creditors.

3. SAME—*when not necessary to file claim against estate.* One electing to pursue his common law remedy to recover rent against the heirs of the lessee, who has bound them by the terms of the lease, need not file a claim against the estate of the deceased lessee nor attempt to collect it out of his personal estate.

4. SAME—*section 67 of Administration act does not apply to contingent claims.* Section 67 of the Administration act, which permits the proving of unmatured claims against an estate, does not apply if the obligation is merely a contingent one.

5. LEASES—*party-wall lease creates cross-easements running with the land.* A party-wall lease which makes its covenants and conditions binding upon the heirs, executors, administrators and. assigns of each party, will, when delivered and acted upon, create cross-easements, which, with the covenants and agreements, will bind all persons succeeding to the estate to which they are appurtenant.

6. SAME—*transfer of leasehold interest carries the burden as well as the benefit.* The right of support given in a party-wall lease constitutes an easement beneficial to the estate of the lessee while the covenant to pay the rent reserved constitutes the burden, and a transferee who accepts the benefit must also assume the burden.

7. SAME—*payment of rent under a party-wall lease is an attornment.* Payment of the rent reserved in a party-wall lease by an heir in possession who received the leasehold interest as part of his share of the lessee's estate, is such a recognition of the landlord's right as to be, in law, an attornment.

8. SAME—*tenant in possession is estopped to deny lessor's title.* One who enters into possession of a building under the lessee in a party

wall lease relating thereto is estopped to deny the lessor's title by claiming that the wall is not upon such lessor's land.

9. SAME—*tender of lease to lessor does not give tenant a right to deny lessor's title.* A tenant does not, by tendering the lease to the lessor without surrendering possession of the premises, put himself in a position to dispute the lessor's title.

10. PROPOSITIONS OF LAW—*court may refuse propositions not based on the evidence.* In trying a case without a jury the court may properly refuse a proposition of law if the evidence fails to establish the facts which it assumes and upon which it is predicated.

11. SAME—*proposition calling for opinion on question of fact is properly refused.* A proposition which calls for the opinion of the court upon a question of fact alone, is properly refused.

*Mackin* v. *Haven*, 88 Ill. App. 434, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the County Court of Cook county; the Hon. M. W. THOMPSON, Judge, presiding.

This is a suit, begun originally before a justice of the peace on March 25, 1897, by the appellees, Dwight Haven, trustee under the last will of Samuel Rush Haven, deceased, and Jane S. Haven against the appellant, John Mackin, to recover the amount due at that date under a lease and party-wall agreement, executed on August 1, 1872, between said Samuel R. Haven, as party of the first part, and Thomas Mackin, now deceased, (father of the appellant,) as party of the second part. The justice of the peace found in favor of the appellant, and appellees prosecuted an appeal from his judgment to the county court of Cook county, where a trial was had before the court without a jury, the jury having been waived by agreement. The county court rendered a judgment against appellant, and in favor of appellees, for $167.50 and costs, being for the installment of rent ($150.00,) which fell due August 1, 1896, and legal interest thereon from that date to the date of the trial in the county court. From the judgment of the county court an appeal was prosecuted to the Appellate Court, where the judgment

of the county court was affirmed. The present appeal is prosecuted from the judgment of affirmance, so entered by the Appellate Court. The Appellate Court has granted a certificate of importance.

Samuel Rush Haven died testate on May 4, 1890, and on June 13, 1890, his will was admitted to probate in the probate court of Cook county. By proceedings had in said probate court, and in a partition suit in the superior court of Cook county, to which Thomas Mackin was a party defendant, the title to lot 9, hereinafter named, passed to appellees; and they thereby became vested with all the right, title, interest and claim of Samuel Rush Haven under the lease hereinafter mentioned. It is conceded by the appellant that, if any recovery at all can be had in this suit, the suit is properly brought by the present appellees, as plaintiffs.

On August 1, 1872, Samuel Rush Haven was the owner in fee of lot 9, in block 113, school section addition to Chicago, known as 326 and 328 South Clark street, situated on the west side of that street. Thomas Mackin, the father of appellant, was at that date in possession of the north half of lot 10 in said block, known as 330 South Clark street, and lying south of lot 9, under a lease from the board of education of the city of Chicago. Thomas Mackin held lot 10 under the last named lease up to the date of his death on November 16, 1893. His leasehold interest in lot 10, being for a period of not less than thirty years, was included in the inventory filed in his estate. Thomas Mackin, desiring to use the south wall of the building on Haven's property as the north wall of the building he proposed to erect on the north half of lot 10, entered into the lease or party-wall agreement with Samuel R. Haven, which was executed by them as above set forth on August 1, 1872.

By the terms of the lease or party-wall agreement, dated August 1, 1872, Haven, as party of the first part thereof, leased to Mackin, as party of the second part

thereof "so much of lot No. 9, etc.,  *  *  *  (being about eleven inches front and rear and extending of that width the full depth of said lot) as lies south of a line through the center of the brick wall which now stands upon said lot 9, and along or near the south line or boundary thereof, together with the right and privilege hereby also granted to said Mackin, his executors, administrators and assigns, to use the said wall as a party wall in the erection, maintenance and support of any building or buildings to be erected during the continuance of this lease by said Mackin, his executors, administrators or assigns, upon the premises next adjoining said lot 9 upon the south, and described as the north half of lot 10, in said block, with the further right to build a continuation of said Haven's south wall to the rear of said lot 9 at his, Mackin's, own expense and for his own use and benefit, but which may be used by said Haven as a party wall by crediting said Mackin as hereinafter specified; said wall to be constructed of brick.   To have and to hold the above described premises with the appurtenances, unto the party of the second part, from the first day of August in the year of our Lord, 1872, for and during and until the first day of August, A. D. 1902, if the said wall, one-half of which is upon the premises hereby demised, shall stand so long.   This lease to be immediately determined by a total destruction of said wall.   And the party of the second part, in consideration of the leasing of the premises aforesaid, does covenant and agree with the party of the first part, to pay him as rent for said premises, at the office of said Haven in Chicago, the sum of $150.00 in advance on the first day of August of each and every year during the continuance of this lease (beginning with this first day of August, A. D. 1872) as yearly rent therefor."   The lease or agreement then specifies the deduction or deductions, which are to be made in the rent by Haven, in case he shall make connections with the wall, which may be erected by Mackin.   By the terms

of the agreement, Mackin is to pay one-half of the expense of repairing and keeping the party wall in order, and Haven is to pay the other half. By the terms of the agreement Mackin agrees, that he will pay all water rates, taxes and assessments against the demised premises, and, if he shall neglect to do so, Haven has the right to pay the same and add the amount of such payment to the rent, and to collect the same by distress or otherwise, as is provided for the collection of the other rents to grow due thereon. By the lease or agreement it is agreed by Mackin for himself, his heirs, executors, administrators and assigns, that the rent and each installment thereof shall be and is declared to be a valid and first lien upon any and all buildings and improvements on the premises, or that may be erected thereon, by Mackin, his heirs, executors, administrators, or assigns. It is also provided therein that, whenever any installment of rent remains unpaid after it becomes due, Haven, his heirs, executors, administrators, etc., may sell at public auction to the highest bidder for cash, after having given a certain notice, the buildings and improvements on said premises, and the interest acquired therein under the lease by Mackin, and may make to the purchaser a bill of sale or deed of the same, and out of the proceeds, after paying expenses, retain the rent due on the lease. Mackin covenants that at the expiration of the lease he will yield up the demised premises to Haven in as good condition as when the same were entered, loss by fire, etc., excepted. The lease or agreement also contains provisions that, if the rent shall be unpaid, or if default shall be made in any of the covenants of the lease to be kept by Mackin, his executors, administrators or assigns, Haven, or his heirs, executors, administrators, etc., may declare the term ended, and enter into the demised premises, and remove Mackin, and re-possess said premises, etc. It is recited in the agreement, that Mackin means and intends thereby to give Haven, his heirs, ex-

ecutors, administrators, etc., a valid and first lien upon all the goods, chattels or other property belonging to Mackin as security to the payment of the rent, and, if at any time the term is ended at the election of Haven or his heirs, etc., Mackin covenants and agrees to surrender and deliver up the premises peaceably to Haven, his heirs, executors, administrators, etc. It is also provided that, if Mackin his executors, administrators or assigns shall remain in possession after notice of default, or after the end of the lease, he is to be deemed guilty of a forcible detainer under the statute, etc.

This lease or agreement, which is signed by Haven and Mackin under their hands and seals, contains the following provision: "It is further understood and agreed, that all the conditions and covenants contained in this lease shall be binding upon the heirs, executors, administrators and assigns of the parties to these presents, respectively."

Thomas Mackin thereafter took possession of the demised premises, and used the south half of the wall as a party wall, the same forming the north wall of the building erected by him on the north half of lot 10. Thomas Mackin continued to use the same until the date of his death. Thereafter appellant, the son of Thomas Mackin, continued to use the same. The building upon the north half of lot 10, and the leasehold interest therein owned by Thomas Mackin, passed to appellant as one of the heirs-at-law of Thomas Mackin.

Thomas Mackin died November 16, 1893, leaving his widow, Martha Mackin, and two children surviving him, as his only heirs-at-law, to-wit: his son, the appellant herein, John Mackin, and his daughter, Alice Philbin, the wife of John J. Philbin. Letters of administration were issued upon his estate to John Mackin, appellant, and J. J. Philbin, Jr., on January 30, 1894. Although the two years for the settlement of the estate expired on January 30, 1896, the estate was not finally declared set-

tled until November 13, 1896. August 1, 1895, there was a settlement and division of the estate between the heirs-at-law of Thomas Mackin, by the terms of which appellant received real estate conceded to be worth over $100,000.00. Included in the property received by appellant was the leasehold interest in the north half of lot 10. Appellant thereupon went into possession of the north half of lot 10, and has ever since collected the rents therefrom. The rent under the lease or party-wall agreement of August 1, 1872, which fell due on August 1, 1894, and August 1, 1895, was paid, the latter by the individual check of appellant. Appellant refused to pay the rent, which fell due August 1, 1896, for the recovery of which the present suit is brought.

Thomas Mackin left personal estate exceeding in value $300,000.00. A complete inventory of all his estate was filed by the administrators in the probate court of Cook county within two years after the issue of letters of administration. No claim for rent under the present lease or party-wall agreement was filed against the estate.

At the close of plaintiffs' case upon the trial below appellant moved for a finding in behalf of the defendant, but this was overruled and exception was taken. When all the proof was in, the same motion was again made, and overruled, and exception was taken.

Appellant submitted to the court, to be held as law in the decision of the case, eight propositions of law. Of these the second and third were marked "held" by the court, but all the others were refused. To this refusal exception was duly taken.

During the trial appellant offered to prove, that the wall in question was partly upon his own land, and not altogether upon the land owned or held by appellees. Upon objection being made, this testimony was not admitted, and an exception was taken to this ruling. Appellant offered to show by a surveyor, that a portion of

the wall in question was in fact on lot 10. An objection to this testimony was sustained, and appellant excepted.

ARTHUR HUMPHREY, for appellant:

This action was originally commenced before a justice of the peace, and hence there are no written pleadings in the cause, and all defenses, including the Statute of Frauds, may be regarded as having been pleaded. *Wilson* v. *Bevans,* 58 Ill. 232.

The rent sued for was a proper claim against the estate of Thomas Mackin, deceased, said estate being amply solvent in personal property alone, and no claim having been filed against said estate for the rent in question it is now barred and no recovery therefor can be sustained. Rev. Stat. chap. 3, secs. 67, 70; *Hales* v. *Holland,* 92 Ill. 494; *Russell* v. *Hubbard,* 59 id. 335; *Sloo* v. *Pool,* 15 id. 47; *Shephard* v. *Rhodes,* 60 id. 301; *Roberts' Admr.* v. *Flatt,* 142 id. 485.

An heir is not liable for the debts of his ancestor when such ancestor leaves personal estate sufficient to discharge all just demands against his estate. *Hoffman* v. *Wilding,* 85 Ill. 453; *People* v. *Brooks,* 123 id. 246; *Laughlin* v. *Heer,* 89 id. 119; *Guy* v. *Gericks,* 85 id. 428.

Where an action is brought against the heirs or devisees under our statute, the facts authorizing it must be distinctly set forth in the declaration. (*Ryan* v. *Jones,* 15 Ill. 1.) In this case the declaration contains merely the common counts. No recovery could therefore be had against appellee, as devisee. *McLean* v. *McBean,* 74 Ill. 134.

The personal estate must be exhausted before the real estate taken by the heirs can be touched. *Guy* v. *Gericks,* 85 Ill. 428.

HILL, HAVEN & HILL, (WILLIAM GARNETT, Jr., of counsel,) for appellees:

Under the common law, where, by a specialty, an ancestor expressly bound the heir, and thereafter the ancestor died leaving real estate which descended to the heir,

the heir was liable, under such specialty, to the extent of the real estate inherited and not disposed of before suit brought. *Ryan* v. *Jones,* 15 Ill. 1; *Hoffman* v. *Wilding,* 85 id. 455; *People* v. *Brooks,* 123 id. 248; *Payson* v. *Haddock,* 8 Biss. 293; Taylor on Landlord and Tenant, sec. 462.

The remedies provided by sections 11 to 14 of chapter 59, relating to frauds and perjuries, are simply cumulative to the common law remedy and do not supersede it. They have the effect of furnishing not only additional remedies to the specialty creditor, but also to all creditors of the deceased. *Ryan* v. *Jones,* 15 Ill. 1; *Crocker* v. *Smith,* 10 Ill. App. 376; *Hoffman* v. *Wilding,* 85 Ill. 453.

It is a general rule in the construction of statutes that they are not presumed to alter the common law farther than they expressly declare; and where a statute gives a new remedy, and contains no negative, express or implied, of the old remedy, the new one provided by it is cumulative, and the party may elect between the two. *Smith* v. *Laatsch,* 114 Ill. 279; *Bank* v. *McCrea,* 106 id. 289.

The covenant in the lease on behalf of the heirs and assigns is joint, and by statute is made joint and several. Rev. Stat. chap. 76, sec. 3.

The covenant in a lease or deed to pay rent is one that runs with the land. *Webster* v. *Nichols,* 104 Ill. 160; *Roche* v. *Ullman,* id. 11; *Sexton* v. *Chicago,* 129 id. 334; *Railroad Co.* v. *Railroad Co.* 174 id. 453; *Consolidated Coal Co.* v. *Piers,* 39 Ill. App. 456.

A covenant will run with the land when it tends directly or necessarily to enhance its value or render it more beneficial or convenient to the owner or occupant. *Gibson* v. *Holden,* 115 Ill. 205; *Railroad Co.* v. *Railroad Co.* 174 id. 453.

A conveyance of an estate to which an easement has become appurtenant carries with it the easement, whether mentioned in the deed or not. *Roche* v. *Ullman,* 104 Ill. 11; *Tinker* v. *Forbes,* 136 id. 242; *Gebhardt* v. *Reeves,* 75 id. 301; *Shelby* v. *Railroad Co.* 143 id. 385.

A tenant in possession cannot dispute his landlord's title. He is estopped from so doing. *Sexton* v. *Carley*, 147 Ill. 272; *Heisen* v. *Heisen*, 145 id. 665.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:.

*First*—The propositions of law numbered 4 and 5, asked by the appellant upon the trial below and refused by the trial court, announce that the appellees, plaintiffs below, having failed to file the claim sued on in this case against the estate of Thomas Mackin, deceased, within two years from the granting of letters of administration on said estate, the claim was forever barred by section 70 of chapter 3 of the Revised Statutes of Illinois, unless the appellees should find other estate of Thomas Mackin, not inventoried or accounted for by the administrators of said estate.

The refusal of propositions numbered 4 and 5 raises the question, whether this suit is properly brought as to the time when it was brought, and as to the person against whom it is brought. Section 11 of chapter 59 of the Revised Statutes, entitled "Frauds and Perjuries," provides that any person, his heirs, etc., who may have any debts or demands against any person who shall die intestate, and leave real estate to his heirs, to descend according to the laws of this State, may have and maintain the same actions which lie against executors and administrators upon his bonds, specialties, contracts and agreements against the executors or administrators and the heirs, or against the executors or administrators and the devisees, or may join the executors or administrators, the heir or heirs, and the devisees of such obligor, and shall not be delayed for the nonage of any of the parties. (2 Starr & Curtis' Ann. Stat.—2d ed.—p. 2029). Section 12 of the same act provides that, when any lands shall descend to any heir, and the personal estate of the ances-

tor of such heir shall be insufficient to discharge the just demands against such ancestor, such heir shall be liable to the creditor of the ancestor to the full amount of the lands, or rents and profits out of the same, as may descend or be devised to the said heir, etc. (Ibid. p. 2030). Section 13 of said act provides that, when any suit is brought against any heir, he may plead *riens per descent* at the time of the commencement of the suit, and the plaintiff may reply that he had lands from his ancestor before the commencement of the suit, and if, upon issue joined, it be found for the plaintiff, the jury shall inquire of the value of the lands, etc., and thereupon judgment shall be given and execution awarded as aforesaid, etc. (Ibid. 2031).

Section 70 of chapter 3 of the Revised Statutes, entitled "Administration," provides that "all demands not exhibited within two years, as aforesaid, shall be forever barred, unless the creditors shall find other estate of the deceased, not inventoried or accounted for by the executor or administrator, in which case their claims shall be paid *pro rata* out of such subsequently discovered estate," etc. (1 Starr & Curtis' Ann. Stat.—2d ed.—p. 302). Section 67 of the same act provides that "any creditor, whose debt or claim against the estate is not due, may, nevertheless, present the same for allowance and settlement, and shall, thereupon, be considered as a creditor under this act, and shall receive a dividend of the said decedent's estate, after deducting a rebate of interest for what he shall receive on such debt, to be computed from the time of the allowance thereof to the time such debt would have become, due, according to the tenor and effect of the contract." (Ibid. p. 300).

It is conceded that the claim of appellees for rent, which is sued upon in this case, was not presented against the estate of Thomas Mackin within two years after the issuance of letters of administration. The contention of appellant is, that it could have been presented within

the time stated, and, inasmuch as it was not so presented, that it has been barred, and cannot now be enforced. It is also claimed by counsel for appellant, that this suit could not be brought against the heirs of Thomas Mackin under the above quoted sections of chapter 59, because he left personal property sufficient to discharge all demands against his estate.

The contentions of appellant would have much force, if the remedy here sought to be enforced was under the statutes above named. But the lease or party-wall agreement of August 1, 1872, contained a provision, that all the conditions and covenants therein contained "shall be binding upon the heirs, executors, administrators and assigns of the parties to these presents, respectively." At common law the heir, as such, was not liable for the debts of the estate of his ancestor, but took the real estate free of any claims of general creditors. While this was so, yet, at common law, "the ancestor might, by a specialty, bind the heir to the payment of a debt by expressly so declaring in the deed, and the heir was then bound to the extent of assets descended,—that is, to the extent of the value of the real estate coming from the ancestor to the heir by inheritance, for the word 'assets' in this connection always meant real estate." (*People* v. *Brooks,* 123 Ill. 246; Taylor on Landlord and Tenant, sec. 462; *Ryan* v. *Jones,* 15 Ill. 1; *Hoffman* v. *Wilding,* 85 id. 453). In *Ryan* v. *Jones, supra,* this court said: "Nor was an heir liable for the debts of the ancestor, in respect of lands descended, except in particular cases; such as debts due on specialties, in which the ancestor expressly bound the heir." The debt sued for in the case at bar is a debt due upon a specialty, to-wit: a lease or party-wall agreement under seal; and by the express terms of that specialty the heirs of Thomas Mackin are bound. The appellant, as heir of Thomas Mackin, received by descent real estate worth more than $100,000.00. It would appear, therefore, to be clear that the heirs of Thomas Mackin are liable

for the rent sued for under this lease. The liability, thus imposed at common law, could only be escaped by pleading and proving *riens per descent.* As was said in *People* v. *Brooks, supra:* "If the heir had *bona fide* aliened the lands, which he had by descent, before an action was commenced against him, he might discharge himself by pleading that he had nothing by descent at the time of suing out the writ or filing the bill, and the obligee had no remedy at law." (See also *Crocker* v. *Smith,* 10 Ill. App. 376).

It is claimed, on the part of the appellant, that the common law remedy upon specialties, in which the ancestor expressly bound the heir, has been superseded by sections from 11 to 14 inclusive of our statute in regard to frauds and perjuries, being chapter 59 of the Revised Statutes. We are of the opinion, however, that the provisions of the statute thus referred to are merely cumulative to the common law remedy. They have the effect of furnishing additional remedies to all the creditors of the deceased, including specialty creditors.

In *Ryan* v. *Jones, supra,* section 6 of chapter 44 of the Revised Statutes of 1845, which was substantially the same as section 11 of chapter 59 of the present Revised Statutes, came under the consideration of this court, and it was there said: "It may be that a separate action will still lie against heirs in cases where they were suable at common law."

In *Hoffman* v. *Wilding, supra,* it was said by this court: "At the common law, an heir was not liable for the debts of the ancestor, in respect of lands descended, except in particular cases, such as debts due on specialties, in which the ancestor expressly bound the heir, and on judgments recovered against the ancestor and recognizances acknowledged by him; and where the heir aliened the lands before suit brought, the creditor was without remedy against him. * * * As the debt, upon which this action was brought, does not fall within any of the speci-

fied cases in which, at common law, the heir would be liable, if the action can be maintained, it must be under the provisions of our statute."

In *Crocker* v. *Smith, supra*, the Appellate Court, speaking through the late Justice BAKER of this court, who was then a member of that court, said: "It is clear that appellee does not, by the averments in his declaration, bring himself within the provisions of the Statute of Frauds and Perjuries; and it is contended by appellant that the provisions of that statute worked a repeal of the common law remedy. We do not so understand the law. The remedies against heirs and devisees, furnished by the statute, are cumulative in their character, and afford not only a means for the collection of many debts and demands against deceased persons, for the collection of which no provision existed prior thereto, but also additional means for the collection of such debts as were already, at common law, a charge upon the heir. The purpose of the statute was not to change the common law remedy then existing for specialty creditors, when the ancestor had expressly bound the heir, but to give additional remedies, not only to them, but to all creditors of the deceased."

The view, that the statute has not superseded the old common rule and remedy, but has merely given additional and cumulative remedies, is sustained by the principles of statutory construction applicable in such cases. It is a general rule in the construction of statutes, that they are not to be presumed to alter the common law further than they expressly declare. Statutes are to be construed in reference to the principles of the common law; and it is not to be presumed, that the legislature intends to make any innovation upon the common law further than the case abolutely requires. (*Cadwallader* v. *Harris*, 76 Ill. 370; *Canadian Bank* v. *McCrea*, 106 id. 281; *Smith* v. *Laatsch*, 114 id. 271). A careful examination of the statutory provisions above referred to will show, that there

is nothing in them inconsistent with the continued existence of the common law remedy. They were intended merely to enlarge that remedy, and not to extinguish it. The statute does not expressly repeal the common law remedy, nor use such language as is inconsistent with its further existence. In *Chicago and Northwestern Railway Co.* v. *City of Chicago,* 148 Ill. 141, we said: "Bouvier, in his Law Dictionary, defines a cumulative remedy to be 'a remedy created by statute in addition to one which still remains in force.' * * * Where a statute gives a new remedy and contains no negative, express or implied, of the old remedy, the new one provided by it is cumulative, and the party may elect between the two."

Counsel for appellant refers to a number of cases in support of the position, that the heir is not liable for the debts of his ancestor, where such ancestor leaves personal estate sufficient to discharge all just demands against his estate. (*People* v. *Brooks, supra; Guy* v. *Gericks,* 85 Ill. 428; *Hoffman* v. *Wilding, supra; Laughlin* v. *Heer,* 89 Ill. 119; *McLean* v. *McBean,* 74 id. 134). But a careful study of these cases will show that, under the facts therein stated, there were no common law remedies. In all the cases so cited, the proceedings were attempted to be had directly under the statute; and they were all cases, in which no remedy existed at the common law; and to justify a recovery it was necessary that the statute should be strictly complied with. There is nothing in these cases, so far as we can discover, which is inconsistent with the decision in *Crocker* v. *Smith, supra.* Inasmuch as the remedy here sought to be enforced is the common law remedy above referred to, it was not necessary to file the present claim against the estate of Thomas Mackin, or to make any attempt to collect it from his personal estate. In addition to this, the rent did not fall due until August 1, 1896, which was after the expiration of the two years allowed by law for the filing of claims in the county or probate court. In construing section 67 of chapter 3 in regard

to "Administration," as to the matters above quoted, we held in *Dunnigan* v. *Stevens*, 122 Ill. 396, that, if the obligation is an absolute undertaking, the claim can properly be proved against the estate in the probate court, even where the debt or claim is not due, but that, if the obligation is merely a contingent liability, then the claim is not properly provable in the probate court, and cannot be allowed. In *Stone* v. *Clark's Admr.* 40 Ill. 411, where the claim filed was based upon an indemnifying bond made by Clark, under which no damage resulted to Stone until more than two years after letters of administration were granted, it was held that Stone had no claim until he was damnified, and, as he was not liable on the notes and suffered no damage until after the lapse of the two years, his claim had not accrued within two years, and no suit could have been instituted within the two years. In the case at bar, the lease or party-wall agreement provides, that the premises are to be held by Thomas Mackin from August 1, 1872, until August 1, 1902, "if the said wall, one-half of which is upon the premises hereby demised, shall stand so long. This lease to be immediately determined by a total destruction of said wall." It thus appears that, until August 1, 1896, arrived, it could not be determined whether the wall might not be totally destroyed, or whether the lease might not be determined by failure to pay the rent, or what amount of rent would be due on that day; for, at any time, the representatives of the Haven estate might see fit to use some portion of the wall erected by Mackin under the terms of the lease, and, in such case, deduction would be required from the amount of the rent. The payment of rent under this lease was, therefore, dependent and conditioned upon the happening, or not happening, of certain events. If the claim had been presented to the probate court during the two years for the rent due August 1, 1896, it would have been a sufficient answer thereto to say, that the rent was only payable upon a contingency.

The only effect of the provision of the statute, embodied in section 70 of chapter 3, as above quoted, is to bar any action against the administrator or executor, unless the claim is filed within the two years, except as to assets not inventoried. (*Snydacker* v. *Swan Land and Cattle Co.* 154 Ill. 220).

Counsel for appellant objects to the form of the judgment entered by the court below, and says that the judgment was erroneous, because it was rendered against the appellant alone, whereas it is claimed that the judgment, if any, should have been against appellant and the other heir, payable out of the real estate descended. This question was not raised either in the county or Appellate Court, and it is, therefore, too late to consider it in this court. It is shown here that appellant, as heir of Thomas Mackin, received real estate by descent, exceeding in value $100,000.00, and that he still holds all the property so acquired, and, at the time of the trial, was in receipt of the rents and profits thereof. He was clearly personally liable for the payment of this claim, arising out of a breach of his ancestor's covenant. That covenant bound him jointly with the other heirs of Thomas Mackin, and, by the statute of this State, "all joint obligations and covenants shall be taken and held to be joint and several obligations and covenants." (Rev. Stat. sec. 3, chap. 76, entitled "Joint Rights and Obligations;" 2 Starr & Cur. Ann. Stat.—2d ed.—p. 2321).

*Second*—The objection to the form of the judgment, however, disappears when it is remembered that the right to recover in this case is not merely predicated upon appellant's liability, as heir of the lessee, to whom real estate had descended, but, also, as assignee of the lease in possession thereunder, and enjoying the rents and profits thereby conferred. By the lease Thomas Mackin, his heirs and assigns, acquired the right to use the wall upon the demised premises, as a party wall, in the erection and support of any building to be erected, during

the existence of the lease, by Mackin. Mackin, his heirs and assigns, as owners of the leasehold interest in the north half of lot 10, were thus clothed with an easement in the property of Haven, which was appurtenant to their interest or estate in lot 10. The weight of authority establishes the position, that an agreement under hand and seal, containing covenants and stipulations such as are found in the present agreement, "will, when duly delivered and acted upon, as was done in this case, create cross-easements in the respective owners of the adjacent lots, with which the covenants and agreements will run, so as to bind all persons succeeding to the estates to which such easements are appurtenant." (*Roche* v. *Ullman*, 104 Ill. 11). The easement here was in favor of Mackin, his heirs and assigns, and, after its creation, any conveyance of the property, to which the easement was appurtenant, had the effect of conveying and transferring the easement also. In other words, any conveyance of Mackin's leasehold interest in the north half of lot 10 conveyed and transferred the easement in the south wall of Haven's property, even though that easement was not mentioned in the conveyance or assignment. (*Roche* v. *Ullman*, *supra; Tinker* v. *Forbes*, 136 Ill. 221; *Gebhardt* v. *Reeves*, 75 id. 301; *Shelby* v. *Chicago and Eastern Illinois Railroad Co.* 143 id. 385).

By operation of law, the leasehold interest of Mackin in lot 10, with all its appurtenances, passed to his representatives. (Taylor on Landlord and Tenant, sec. 427). By agreement a partition of the assets, including this leasehold interest, was made between appellant and his sister, Alice Philbin, the two heirs of Thomas Mackin, and this leasehold interest fell to appellant. The proof shows, that thereafter the administrators of Thomas Mackin's estate turned over, assigned and transferred to each of the heirs the property they had respectively agreed to take, and executed to them written assignments of their respective interests, and delivered possession

thereof to them respectively. Appellant admits in his testimony that, in the settlement of his father's estate, this leasehold interest was set over to him, and that he was in possession thereof, and received it from his father's estate in a division between himself and his sister as a part of his share of said estate, and was collecting the rents and profits therefrom; and that, on taking possession and assuming the ownership of the lease, together with the premises described in it, he kept on collecting the rents the same as before. This evidence establishes an assignment and transfer of this leasehold interest in the north half of lot 10 with its appurtenances to the appellant. The object of the agreement was to give the owner of the leasehold estate in the north half of lot 10 the right to use the south wall of the Haven building on lot 9 as the north wall of the building to be erected on lot 10, as a means of support. The right thereby acquired was clearly a benefit to Mackin, and his heirs and assigns, and to their leasehold estate. As such it constituted an easement appurtenant to that estate. Mackin, for himself and his heirs and assigns, covenanted to pay the rent reserved in the lease; and this was a burden which went with the privilege, and, when the benefit was accepted, the burden was assumed. A transfer of the leasehold estate carried with it not only the right, but also the burden. Both covenants necessarily run with the land. A covenant will run with the land, when it tends directly or necessarily to enhance its value, or render it more beneficial or convenient to the owner or occupant. (*Gibson* v. *Holden*, 115 Ill. 199; *Louisville and Nashville Railroad Co.* v. *Illinois Central Railroad Co.* 174 id. 448). The covenant in a lease or deed to pay rent is one that runs with the land. (*Webster* v. *Nichols*, 104 Ill. 160; *Sexton* v. *Chicago Storage Co.* 129 id. 318; *Roche* v. *Ullman, supra; Louisville and Nashville Railroad Co.* v. *Illinois Central Railroad Co. supra*). Under our statute "real estate" embraces "chattels real," and a lease for years of

land with the building thereon is a chattel real. (1 Starr
& Cur. Stat.—2d ed.—p. 957; *Knapp* v. *Jones,* 143 Ill. 375).

In view of what has been said, we are of the opinion
that the trial court committed no error in refusing to
hold as law the seventh proposition, asked by the appel-
lant, to the effect, that the lease from Haven to Thomas
Mackin was never assigned to or owned by the appellant.

Some objection is urged by counsel for appellant to
the admission by the court below of the evidence, relat-
ing to the assignment and ownership of the leasehold
interest by appellant. This objection is without force.
A report of the administrators, signed by the appellant
himself, was introduced in evidence, which showed that
such leasehold was, by written deed of conveyance, trans-
ferred by the administrators to the appellant. Although
some objection was made at the trial to this proof, yet
the objection urged was a general one, and not specific
upon the ground that there existed better evidence of
the fact. The evidence introduced was admissible as an
admission by the appellant himself in regard to the as-
signment of the leasehold interest. As the objection was
general, and not specific, to the proof offered it cannot
be raised in this court. (Bradner on Evidence, secs. 9, 10,
p. 498; *Sargeant* v. *Kellogg,* 5 Gilm. 273; *Swift* v. *Whitney,*
20 Ill. 144; *Espen* v. *Hinchliffe,* 131 id. 468; *Weber* v. *Mick,*
131 id. 520).

There is testimony in this case, which tends to es-
tablish an attornment upon the part of appellant to the
present appellees. After the leasehold interest in the
north half of lot 10 had been set off and assigned to the
appellant in the partition between him and his sister, he
sent a check for the rent due on August 1, 1895, to the
appellee, Dwight Haven. This was his own personal
check, and not signed by him as administrator. This pay-
ment was made by him after he had become the owner of
the property, and while it no longer remained the prop-
erty of the estate. It cannot be claimed, therefore, that

the payment was made in behalf of the estate, and not in behalf of appellant individually. This is a question of fact, however, which has been settled against the appellant by the judgments of the courts below. Payment of rent under a lease is such a recognition of the landlord's right, as to be, in law, an attornment. (*Fisher* v. *Deering,* 60 Ill. 114; *Voigt* v. *Resor,* 80 id. 331). There having, therefore, been an attornment by the appellant to appellees, the relation of landlord and tenant between appellees and appellant was thereby created; and appellant was personally liable for the rent, so sued for, to the appellees; and the suit was properly brought against him alone.

*Third*—By the first refused proposition of law, the appellant asked the court to hold, as matter of law, that, where one of two adjoining property owners builds upon his premises and, in building, extends his wall over onto the adjoining owner's property without said owner's license or permission, said adjoining property owner has the right to use the wall, and to connect his building with the same, so long as he does not cut into said wall beyond the line of his property. The proposition thus submitted may be correct as a mere rule of law, but it does not apply to the facts in this case, as there is no evidence in the record of the existence of any such facts as those, upon which the proposition is predicated. It was not error in the court below to refuse to hold it as law in the decision of the case. The court, trying a case without a jury, may properly refuse a proposition submitted, when the evidence fails to establish the state of facts it assumes, and upon which it is predicated. (*Windmiller* v. *Chapman,* 139 Ill. 163).

In line with this subject is the sixth proposition of law asked by the appellant, and which was refused by the court below. By the latter proposition the court was asked to hold, as matter of law, that the appellant is not estopped from denying that the said brick wall, men-

tioned in the lease, does not all stand upon said lot 9, and that appellant has the right to adduce competent testimony, if he can, tending to show that the said wall extends partially upon said lot 10. In the trial of the case the appellant also offered to show, by testimony which was excluded by the court, that the wall did extend partly upon said lot 10. The refusal of proposition 6, and the refusal to admit the offered testimony thus referred to, are assigned as errors by the appellant.

The only effect, which the excluded testimony could have had, would have been to question the title of the appellees, and, therefore, under the circumstances of this case, such testimony was clearly incompetent, and was properly excluded. No rule of law is better settled than that the tenant is estopped from denying the title of his landlord. "His possession is subservient to the title of the party under whom he entered. * * * He cannot set up a better title in himself or a third person. * * * The same principle applies to those acquiring the possession from the tenant. The relation of landlord and tenant attaches to all who succeed to the possession through or from the tenant. They acquire no greater right than the party from whom they received possession." (*Sexton* v. *Carley*, 147 Ill. 269). In the case at bar, as Thomas Mackin could not deny the title of the appellees to the demised premises, so the appellant, here holding under Thomas Mackin, cannot deny the same. Where the tenant enters under his landlord, he thereby acknowledges that the landlord is the owner, and the tenant is estopped from denying it. (*Doty* v. *Burdick*, 83 Ill. 473; *Hardin* v. *Forsythe*, 99 id. 312). Upon the trial of the case, the appellant tendered appellees the lease from S. R. Haven to Thomas Mackin, and offered to surrender the same, and claimed that he thereby put appellees in the same position which the original lessor occupied before the lease was made; and that, having done so, he then had a right to contest appellees' right to recover by showing that

the wall in question was located partly upon lot 10. We concur with the following views expressed upon this subject by the Appellate Court in their decision of this case: "It was immaterial whether Haven's claimed ownership of the demised premises at the time the lease was entered into, was rightful or not, or to whom the land belonged. Rightfully or wrongfully, Haven built the wall upon the land in question, and was in possession thereof. Thomas Mackin knew of and acquiesced in Haven's claim, whatever it was, and the fact of the existence of the wall and its possession by Haven, and entered into the lease and took possession under it, and such possession has continued by himself or his heirs through him, ever since. * * * (*Fleming* v. *Mills*, 182 Ill. 464). * * * The offer made by appellant at the trial to surrender the paper lease was wholly unavailing to pave the way for the introduction of the offered, but rejected testimony. Such an act in no manner meets the requirements of law that, before a lessee can assail or question his lessor's title, under which he has entered, he must restore possession —must place his lessor in the same position he occupied before he parted with possession. * * * Manifestly appellant's possession of the land and wall would not be surrendered by his bare surrender of the paper writing. There was no error in refusing to admit the offered testimony."

Appellant insists, however, that there is an exception to the general rule, that a tenant cannot deny the title of his landlord, and that the exception exists where the tenant has been induced by fraud, artifice or mistake to accept the lease. Certain authorities are referred to in support of this position. No proof of fraud or artifice was offered. The general rule upon this subject is that "when the fraud appears upon the face of a lease or deed, it may be invalidated in a court of law, but where the fraud consists in matter *dehors* the lease, it is voidable only in equity." (1 Wood on Landlord and Tenant,—

2d ed.—sec. 118). The fact, that the wall may have been partly upon lot 10, in which Thomas Mackin had a leasehold interest, would not show conclusively, that there had been a mutual mistake on the part of Samuel R. Haven and Thomas Mackin. As was said by the Supreme Court of Pennsylvania in *Thayer* v. *Society of United Brethren*, 20 Pa. St. 60: "The mere fact, that the tenant has a better title than his landlord, does not of itself raise the presumption that the lease was a fraud or accepted by mistake. The lease is not rendered void by proving title in the lessee. To make the law otherwise, would be to say that the tenant shall not set up title in himself when he has none, and that the lease shall be no evidence of the landlord's rights except when he can prove them without it."

We are of the opinion, that the court below committed no error in rejecting the offered testimony, nor in refusing to hold as law the propositions based upon the facts which, as it is claimed, would have been established by such testimony if introduced.

*Fourth*—It is assigned as error, that the court refused to hold as law one or two other propositions which were marked, "refused," by it. No error was committed in this regard. Upon a careful examination of these propositions they cannot be regarded otherwise than as requests to pass upon questions of fact. "The purpose of the statute is to enable a party to submit propositions with a view to obtaining the opinion of the court upon material and controlling principles of law only, and when the proposition calls for the opinion of the court upon a question of fact, it may properly be refused." (*Knowles* v. *Knowles*, 128 Ill. 110; *County of LaSalle* v. *Milligan*, 143 id. 321).

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*