### John D. Williams, Defendant in Error, v. G. H. Head, Plaintiff in Error.

### Gen. No. 6,786.

1. CHATTEL MORTGAGES, § 203*—*when mortgagee must take possession.* Possession of mortgaged chattels must be taken by the mortgagee within a reasonable time after default in payment or other condition broken by the mortgagor, and failure to take possession is a fraud *per se* as to third persons which is not subject to explanation.

2. CHATTEL MORTGAGES, § 203*—*what is insufficient taking of possession by mortgagee.* That a constable to whom chattel mortgages were given with directions to foreclose went to the mortgagor's farm on which the chattels were located and told the mortgagor he was foreclosing, posting notice of sale, and then went to the farm of the mortgagee, who was the mortgagor's son-in-law, about a mile and a half away, and designated him as custodian of the chattels does not constitute such a taking and retaining of possession so as to preserve the lien of the mortgages as against a levy by a subsequent judgment creditor, where the mortgagor remained in possession of the chattels, exercised ownership over them in same manner as before, there were several postponements of the sale and nothing further was done by the mortgagee regarding the possession and custody of the chattels until after the levy of the execution by the judgment creditor.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

3. CHATTEL MORTGAGES, § 248*—*what is insufficient to establish foreclosure.* That the constable to whom chattel mortgages were given for foreclosure testified, in a trial of right of property between the mortgagee and a subsequent judgment creditor, that he "foreclosed the mortgages" and that he indorsed on the mortgages that he had done so, is not sufficient to establish a legal foreclosure.

Error to the County Court of Kane county; the Hon. S. N. HOOVER, Judge, presiding. Heard in this court at the April term, 1920. Reversed and remanded. Opinion filed June 29, 1920.

HARRY G. HEMPSTEAD, for plaintiff in error.

ROBERT G. EARLEY, for defendant in error; CHARLES L. HUNT and PAUL H. BURDICK, of counsel.

MR. JUSTICE HEARD delivered the opinion of the court.

May 19, 1917, William Deckert, a farmer operating a dairy farm in Kane county, to secure a note for $3,000 maturing October 19, 1917, executed to defendant in error, his son-in-law, a chattel mortgage upon the following described property: 26 acres of wheat; 25 acres of barley; 30 acres of oats; 15 acres of timothy and clover hay in meadow; 35 acres of corn; 1 bay mare 8 years old, weight about 1,200 lbs.; 1 Deere manure spreader; 1 sulky plow; 1 three-horse wooden drag; 2 single row riding cultivators; 1 walking plow; 1 corn planter; 1 two-seated buggy; 2 sets double harness; 1 Deere hay loader; 1 top buggy; 1 single harness; 2 three-horse pulverizers; 1 Victor two-unit milking machine and gasoline engine; 50 milk cans. All being upon the farm occupied by said mortgagor and known as the "Newman farm" in township of Campton, Kane county, Illinois. On May 25, 1917, Deckert executed another chattel mortgage to Williams to secure note of $1,000 of even date therewith, due

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

5 months after date, thus maturing on the 25th day of October, 1917, upon the same property, together with any and all other stock, tools and machinery and growing crops, now on the farm occupied by said mortgagor, known as the ''Newman farm'' and owned by C. W. Bolcum, in the township of Campton, Kane county, Illinois. The mortgages each provided that the mortgagor should retain possession of the property until default in the payment of the note. Each mortgage contained a provision that if the mortgagee felt himself insecure he could elect to declare the note due, and provided that upon default in payment the mortgagee should have the right to take possession of, keep and store the same on said premises until sold; or remove, and sell and dispose of the said property, or any part thereof, at public auction, to the highest bidder, after giving 3 days' notice of the time, place and terms of sale, together with a description of the property to be sold, by notices posted up in three public places in the vicinity of such sale, or at private sale, with or without notice, for cash or on credit, as the said mortgagee, his heirs, executors, administrators or assigns, agents or attorneys, or any of them, may elect.

Deckert, after giving the mortgages, continued in the possession of the property covered by them. On October 20, 1917, M. E. Sinton, a constable, was given the two mortgages, herein described, by R. G. Earley, attorney for Williams, with instructions to foreclose same. Sinton went to the farm occupied by Deckert and told Deckert he was foreclosing the mortgages. He posted notices of sale and then went to the farm of Williams about one and one-half miles distant, and told Williams he would put him in charge of the property as custodian. Deckert was left in possession of the property and continued to operate the farm by milking cows, hauling milk to the village, and other-

wise running the farm just the same as he had done up to that time.

Williams was not shown by the evidence to have been on Deckert's farm from the time he was appointed custodian except on the two different days set for mortgage sale. The first date set for the sale was October 25 and on that date Sinton went to the Deckert farm and postponed the sale indefinitely without fixing any time when the sale would be held and without posting new notices. On October 25 a judgment was entered in the circuit court of Kane county in favor of plaintiff in error and against William Deckert on which immediate execution was issued and placed in the hands of the sheriff and on which a levy was made on the same date. No new custodian was appointed by Sinton or nothing further done with reference to the sale until after November 1, when he again posted notices of sale of the property to be held November 9. He did nothing further, however, about a custodian or about taking possession of the property and Deckert still continued to have possession of and use the property in the same manner as he had been doing for several years up to that time.

On November 9, Sinton again postponed the sale indefinitely by order of mortgagee's attorney and he then returned mortgage and other papers which he had in his possession in connection therewith to Earley, the attorney for mortgagee.

On November 20, a notice was filed in the county court by Williams, mortgagee, and a trial of right of property had under the statute, resulting in a verdict and judgment for Williams, from which the record was brought to this court on writ of error for review. Subsequent to the filing of said petition a stipulation was entered into between the parties, whereby a sale of the chattel property was had without prejudice to the rights of the parties, the proceeds to be held by the clerk of the sale pending the final determination of

the rights of the parties. The vital question in the case is whether or not under these circumstances the mortgagee can hold the mortgaged property as against the levy of an execution in behalf of a judgment creditor.

In *Reed v. Eames,* 19 Ill. 594, it was said: "Suffering property to remain in the hands of the vendor or mortgagor, after default, is a fraud, because the real ownership being in one person, and the ostensible ownership in another, gives the latter a false credit. Some courts have held that such facts are open to explanation—that they are, at most, but evidence of fraud. We think the better rule is—the safest and founded in the best policy—to hold that such facts constitute fraud *per se,* and not to be explained."

In *Thompson v. Yeck,* 21 Ill. 73, the court says: "Possession of personal property being one of the strongest indications of ownership, the policy of the law is, that so soon as the credit expires, the mortgagee shall take possession, so that others may not be deceived and defrauded by the appearance of ownership in one, while the title is really in another."

In *Burk v. Faber,* 188 Ill. App. 421, it was said: "A chattel mortgage ceases to be a lien as to third parties if the mortgagee upon default does not take possession. *Slade v. Kurrus,* 133 Ill. App. 99. It is clearly the law that if the mortgagee fails to take possession of the mortgaged property within a reasonable time after the maturity of the mortgage, and it is allowed to remain in the possession of the mortgagor, that such is a fraud as to creditors and purchasers, and such a fraud as cannot be explained."

In *Albert Pick & Co. v. Spoor,* 212 Ill. App. 612, it was said: "It has long been the law of this State that possession of mortgaged chattels must be taken by the mortgagee within a reasonable time after default in payment or other condition broken by the mortgagor;

that failure to take such possession is a fraud *per se* as to third parties, not subject to explanation."

In *Shannon v. Wolf*, 173 Ill. 253, it was said: "The law of Illinois has always been that if the mortgagee in a chattel mortgage neglects to reduce the property to possession upon the default of the mortgagor, or within a reasonable time thereafter to be determined by the circumstances of the parties, he loses his lien as against the rights of third persons, and that, as affecting the interests and liens of the latter, the mortgage becomes a void instrument."

The next question which naturally arises is what constitutes a taking of possession within the meaning of the law. To constitute a valid levy of an execution on personal property it is necessary that the officer levying the same "take possession" of the property levied upon. *Windmiller v. Chapman*, 139 Ill. 163.

In construing what constitutes taking possession of personal property by an officer, in levying an execution, in *Minor v. Herriford*, 25 Ill. 344, the court said: "The practice in the different States of the Union differs somewhat, but all agree that the property must be within the power and control of the officer when the levy is made, and he must take it into his possession in a reasonable time thereafter, unless a delivery bond is tendered, and in such an open, public and unequivocal manner as to apprise everybody that the property has been taken in execution. He must so deal with the property, in order to constitute a good levy, as, without the protection of an execution, his acts would make him a trespasser." This rule was followed in *Havely v. Lowry*, 30 Ill. 446; *Davidson v. Waldron*, 31 Ill. 120; *Windmiller v. Chapman, supra,* and many other cases.

In *Martin v. Duncan*, 156 Ill. 274, in passing upon the question as to what constituted a taking possession of mortgaged personal property by a mortgagee, the Supreme Court said: "It was, therefore, import-

ant in this case, as sustaining the validity of the transfer to defendant in error, to show that he was in possession when the property was attached; that there had been a change of possession. Up to May 16, defendant in error had been in possession as agent of his brother, and if, on May 28, he was in possession for himself, the change in the character of the possession should have been indicated by such outward, open, actual and visible signs, as could be seen and known to the public, or persons dealing with the goods. (*Claflin v. Rosenberg,* 42 Mo. 439.)''

In *First Nat. Bank of Crockett v. George R. Barse Live Stock Commission Co.,* 198 Ill. 232, the court said: ''No particular mode of taking or retaining possession is required. It is not necessary that the property be delivered to the mortgagee in person—delivery to his agent is equally effectual. No removal of the property from the mortgaged premises is essential if the mortgagee has actual control of it there. (Jones on Chattel Mortgages, sec. 180; *McPartland v. Read,* 11 Allen [Mass.] 231.) What constitutes a change of possession depends much upon the character and situation of the property. * * * From an examination of the authorities it clearly appears if the mortgagee, through his agent, have the property in his view and under his control, and by exercising control over it by virtue of his mortgage indicates an intention of depriving the mortgagor of his apparent ownership and possession, it is sufficient to protect the property from the claim of third parties.''

In *Funk v. Staats,* 24 Ill. 632, the court said: ''In determining whether the property in this case was, in good faith, reduced to possession by the mortgagee, the court had the right to consider all the circumstances attending the transaction. And a sufficient delivery and possession on a sale of chattels, to operate against creditors and purchasers, will be sufficient on a foreclosure of a chattel mortgage. The reason of

the rule on the one case is the same as in the other, and hence a delivery and possession which will sustain the one will be sufficient in the other."

In *Ticknor v. McClelland*, 84 Ill. 471, and in many other cases it has been held that any sale of personal property, where it remains with the vendor, if it is of that character of property that is capable of being removed, is fraudulent in law as to creditors.

In 35 Cyc. 304, it is said: "In order to pass title as against creditors of or subsequent purchasers from the seller the delivery must be a delivery in its natural sense, that is, a change of possession, and that there must be an actual, visible and continuous change of possession, such as to apprise those accustomed to deal with the seller that the ownership of the goods is changed, or in other words such a manifest, continued and open change of possession as to indicate to the world a change of title; and so it is not sufficient that there has been an actual delivery and actual change of possession if the goods are returned to the apparent possession of the seller so as to indicate there has been no actual change of title."

In Jones on Chattel Mortgages, 375, it is said: "A delivery and possession, which would be sufficient to operate against creditors and purchasers on a sale of personal property, is sufficient on foreclosure of a mortgage. The mortgaged property need not in all cases be removed from the premises of the mortgagor, particularly if it is so heavy that its removal would be difficult and expensive. If the mortgagee keeps it under his control that is sufficient. There must be something more than a mere formal and temporary change of possession. There must be a real, permanent delivery and change of possession in order to preserve the lien of the mortgage."

In *George Walter Brewing Co. v. Lockery*, 134 Wis. 81, 114 N. W. 120, in construing a statute providing that no mortgage of chattels shall be valid as against

another than the mortgagor, if unrecorded, unless possession be delivered to and retained by the mortgagee, the court said: "It has been many times declared by this court, both before and since *Morrow v. Reed* [30 Wis. 81], that the possession necessary to give validity to a chattel mortgage like that essential, under section 2310 [Stat. 1898], to preclude presumption of fraud in a sale, must be actual, open, unequivocal, and exclusive, and accompanied by the ordinary indicia of ownership and control such that those familiar with the situation would naturally draw the inference of a change of ownership. *Bank v. Rugee,* 59 Wis. 221, 18 N. W. 251; *Schneider v. Kraby,* 97 Wis. 519, 73 N. W. 61; *Missinskie v. McMurdo,* 107 Wis. 578, 83 N. W. 758. The delivery required by these statutes is intended as evidence to the world that from the time thereof the grantee or the mortgagee has acquired from the grantor the ownership and control of the property. It differs radically from that mere technical delivery which, as between the parties, is held to evince intent to presently change the title in contradistinction from a mere agreement to transfer some time in the future."

Applying the rules of law above stated to the present case, we are of the opinion that defendant in error lost the lien of his chattel mortgage as against plaintiff in error by not taking and retaining possession of the mortgaged property as required by law. It is true that Sinton, the constable, testified "that he foreclosed the mortgages" and indorsed on each mortgage that he had so done, but this statement was merely a conclusion of the witness, and his testimony as to what he actually did falls far short of a legal foreclosure.

The judgment will be reversed and the cause remanded to the county court of Kane county.

*Reversed and remanded.*